McGuigen Estate.

Argued March 21, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

476

*John A. Metz, Jr.,* with him *Metz, McClure & Mac-Alister,* for appellant.

*James M. McIntyre* and *N. L. Wymard,* for appellants.

*William H. Eckert,* with him *Thomas P. Trimble, Jr., Emerson G. Hess, Jr., Jack G. Armstrong,* and *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellee.

OPINION BY MR. JUSTICE BELL, April 15, 1957:

The question involved is narrow: What, if any, effect did §7(1) of the Wills Act of 1947 have upon the residuary gift contained in testatrix's last will?

Testatrix died on *August 17, 1955.* In her last will dated *August 12, 1955,* after giving a number of pecuniary and specific legacies and providing for the upkeep of her husband's grave, she provided: "SEVENTEENTH: All the rest and residue of my estate, I direct my Executor hereinafter named to convert into cash and distribute the same to HEART HOUSE, Valencia, Pennsylvania, for the general purposes of this organization." She specifically revoked "any Will or Wills by me at any time heretofore made."

Testatrix by a prior will dated May 22, 1953, after making a number of pecuniary gifts and providing a fund for the maintenance of the grave of her husband and her mother, gave her residuary estate to "Peoples First National Bank & Trust Company . . . as Trustee under the following Trusts.

"I. Trusts.

A. My Trustee shall hold the balance of the principal of the trust estate in perpetual trust and shall pay the net income therefrom in convenient installments to Heart House, Valencia, Pennsylvania, for the general purposes of this organization."

Prior to the Act of 1947 the law of Pennsylvania was clearly settled that the residuary gift contained in testatrix's last will of 1955 was void under §6 of the Wills Act of 1917, P. L. 403, 20 PS 195, (because of testatrix's death within 30 days), and the property devised therein to Heart House would not have gone to Heart House under this will or the prior will of 1953 but would have gone to testatrix's heirs or next of kin: *Hartman's Estate*, 320 Pa. 321, 182 A. 234; *McClure's Estate*, 309 Pa. 370, 165 A. 24. Cf. *Melville's Estate*, 245 Pa. 318, 91 A. 679; *Braun Estate*, 358 Pa. 271, 56 A. 2d 201.

In *Hartman's Estate (No. 1)*, 320 Pa., supra, testatrix by a will dated July 28, 1932, bequeathed directly to the White Memorial Congregational Church of Milroy, Pennsylvania, the sum of $500., and then gave her residuary estate to said Church. The will expressly revoked all prior wills. Testatrix died the next day. Testatrix had made a prior will dated July 29, 1931, in which she gave, inter alia, $500. to the White Memorial Congregational Church of Milroy and after certain other specific gifts, gave the balance of her personal estate to said Church. This Court held that under the Act of 1917 and the prior Wills Acts of 1911 and 1855, the church could not take under either will. The Court said (pages 330-331): "Charitable or religious institutions claiming bequests or devises must bring themselves [strictly and literally] within it [the Act]. . . . The act establishes an unbending rule and fixes an arbitrary period within which such disposi-

tions of property, whether by deed or by will, shall be absolutely barred. Such bequests, under the circumstances [death within the 30 day period], fail because of the incapacity in the beneficiaries to take. . . . The act provides that the voided legacies shall in the first place go to the residuary legatee or devisee. In the present case the bequest of the residuary estate is void for the same reason as the other charitable bequests, and hence the fund cannot pass to the residuary legatee but must necessarily go 'to the next of kin and heir-at-law.' "

The reason for the law prior to 1947 was clear. The basic purpose of the 30 day requirement was and is to prevent a testator during his last illness from being importuned or otherwise influenced, by hope of reward or fear of punishment in the hereafter, to leave his estate in whole or in part to charity or to church. Since it would often be difficult to prove whether a man was in his last illness, or whether he had been importuned, or was unduly influenced by charity or church, or was influenced while in extremis by a sudden hope of Heaven or fear of Hades, the Legislature wisely established a clear, realistic and inflexible time period—30 days. However, society came to realize that gifts to charity or church which were made within the last 30 days of a man's life were not always unduly influenced by charity or church and that the law was unfair to testators, charity and church alike for the above mentioned reason, as well as because of the fact that while in good health a testator might die in a motor, railroad or plane accident within 30 days after making his will. The Legislature therefore decided that the prior statutory law in re charitable gifts should be modified and liberalized, and that gifts to charities and churches which were made within 30 days of death should, at least to a limited extent, be

protected and validated where the testator had made a substantially identical charitable gift in a prior extant will.

Section 7(1) of the Wills Act of 1947* reads: "Wills shall be modified upon the occurrence of any of the following circumstances, among others: (1) Death within thirty days.—Religious and charitable gifts. Any bequest or devise for religious or charitable purposes included in a will or codicil executed within thirty days of the death of the testator shall be invalid unless all who would benefit by its invalidity agree that it shall be valid. The thirty-day period shall be so computed as to include the day on which the will or codicil is written and to exclude the day of death. Unless the testator directs otherwise, if such a will or codicil shall revoke or supersede a prior will or codicil executed at least thirty days before the testator's death, and not theretofore revoked or superseded and the original of which can be produced in legible condition, and if each instrument shall contain an identical gift for substantially the same religious or charitable purpose, the gift in the later will or codicil shall be valid; or *if each instrument shall give for substantially the same religious or charitable purpose* a cash legacy or *a share of the residuary estate* or a share of the same asset, payable immediately or subject to identical prior estates and conditions, *the later gift shall be valid to the extent to which it shall not exceed the prior gift.*"**

Testatrix, under the 1953 will, gave her residuary estate of approximately $141,000. to a trustee to pay the net income *in perpetuity to Heart House "for the general purposes of this organization"*; in her last will

---

* Act of April 24, 1947, P. L. 89, §7(1) ; 20 PS §180.7(1).

** Italics throughout, ours.

of 1955, testatrix gave her residuary estate of approximately $94,000., absolutely *to Heart House "for the general purposes of this organization"*.

The appellants who are claiming as next of kin, admit that the two wills contain gifts "for substantially the same charitable purpose" but contend that the two wills do not contain an identical gift, nor the same share of the residuary estate and consequently do not fall within the exception of the Wills Act of 1947. Expressed in another way, appellants contend that the Act of 1947 was intended to preserve and validate charitable gifts made within the prohibited 30 days' period only where the gifts in the last will and in a prior will differed in quantity—not quality—of estate, and then only "to the extent to which it shall not exceed the prior gift". The Act of 1947 was, they contend, "intended to take care of and protect changes in amount, proportion or quantity", but was not intended to apply to and cannot cover "a change in kind or type of gift from one of income in perpetual trust to one of principal immediate and absolute". Although plausible, we cannot agree with this interpretation.

We are unanimously of the opinion that all of the terms, provisions and conditions of §7(1) of the Wills Act of 1947 have been met and complied with by the gifts here in question to Heart House. The gifts of the residuary estate to Heart House were not only "for substantially the same religious or charitable purpose"— they were for identically the same religious or charitable purpose viz. "for the general purposes of this organization". The share given Heart House in the residuary estate in each will was substantially the same, i.e., the entire residuary estate in fee or the income therefrom *forever;* each was payable immediately; and neither of them were subject to prior estates or conditions. Moreover, the residuary estate which was left

by testatrix's last will amounted to approximately $94,-000. and obviously did not exceed the prior gift of her residuary estate which amounted to approximately $140,000. and therefore, to the extent of $94,000., was valid.

The next of kin invoke the well established principle or canon of construction that an heir is not to be disinherited except by clear words or by necessary implication: *Newlin Estate,* 367 Pa. 527, 80 A. 2d 819; *Grothe's Estate,* 229 Pa. 186, 190, 78 A. 88; *Lippincott's Estate,* 276 Pa. 283, 290, 120 A. 136; *Murray's Estate,* 313 Pa. 359, 362, 169 A. 103; *French's Estate,* 292 Pa. 37, 41, 43, 140 A. 549. On the other hand, Heart House invokes the presumption or canon of construction that *the legislature intends to favor the public interest as against any private interest*: *Commonwealth v. Sunbury School District,* 335 Pa. 6, 12, 6 A. 2d 279; *Commonwealth v. N. Y. & Pa. Co.,* 367 Pa. 40, 79 A. 2d 439; Section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552.

These canons of construction offset each other. As this Court said in *Hartman's Estate (No. 1),* 320 Pa., supra: "As between them [charitable and religious institutions claiming bequests or devises made within 30 days of death] and the next of kin of a testator, there are no equities, and the rights of each are such only as are given by the statute: [citing many cases]".

Irrespective of any principle or canon of construction, it is clear that §7(1) of the Wills Act of 1947 should be liberally construed in order to effectuate the object of the Act which was to modify the prior harsh law and to promote justice: *Martin Estate,* 365 Pa. 280, 283, 74 A. 2d 120; Section 58 of the Statutory Construction Act of 1937, 46 PS 558, which by its terms includes future acts such as the Wills Act of 1947 and requires a liberal instead of a strict construction there-

of in order "to effect their objects and to promote justice".

In *Martin Estate,* 365 Pa., supra, the Court said (page 283) : "When an act is changed or repealed and a new or similar act enacted to take its place, or when the words or meaning of a statute are not explicit or clear, the intention of the legislature is to be gathered not only by a consideration of the new act but also by examining the occasion, reason or necessity for the law; the circumstances under which it was enacted; the mischief, if any, to be remedied; the object to be obtained; and the old law upon the subject: Phipps v. Kirk, 333 Pa. 478, 5 A. 2d 143; Orlosky v. Haskell, 304 Pa. 57, 66, 155 A. 112.

"Moreover, in ascertaining the legislative meaning, while what is said in debate is not relevant, the report of a legislative commission or a Senate or House committee may, if obscurity or ambiguity exists, be considered: National Transit Company v. Boardman, 328 Pa. 450, 197 A. 239; Tarlo's Estate, 315 Pa. 321, 172 A. 139."

The Committee on Decedents' Estates Laws of the Joint State Government which drafted the Wills Act of 1947 to ameliorate the rigor of the prior law thus indicated the general intent of the new act (1 C.C.H. Pa. Estates, Wills & Trusts, p. 10112) : "Subsection (1) 'takes care of the situation where a testator has been charitably inclined and then changes his will in some respect within thirty days of death. The present unfortunate situation is illustrated by Hartman's Est., 320 Pa. 321.' "

We hold that the absolute gift to Heart House of the residuary estate amounting to $94,000.—which was made by a will executed within thirty days of testatrix's death, and which revoked a perpetual gift of the income to Heart House from a residuary estate of

$141,000 which was contained in a prior extant will—
is validated by §7(1) of the Wills Act of 1947.

Decree affirmed; costs to be paid by the Estate.