## Yeakel Estate

The facts appear from the following extracts from the adjudication of

BOWMAN, Auditing Judge, February 4, 1960.—The petition for adjudication filed by the accountants suggests that one-fourth of the residuary estate be distributed to the First Methodist Church of Lancaster and the remainder to testatrix' nephew, Paul H. Yeakel, it being stated therein that under the provisions of the quoted section of the Wills Act the gifts to the Lancaster General Hospital and the Cornwall Methodist Home are invalid.

It is not contended that the bequests to the First Methodist Church of Lancaster, the Cornwell Method-

ist Home and the Lancaster General Hospital are not for religious or charitable purposes. It was not agreed by all the parties in interest that the gifts shall be valid.

Since the prior will gave no gift whatsoever to the Lancaster General Hospital, or to any hospital, the gift to it in the later will fails.

It should be observed that in the prior will of August 2, 1951, the revocation of which was clearly effected by the later will, the bequest in part of the residuary estate to the First Methodist Church of Lancaster and the Methodist Home for the Aged was subject to life estates in testatrix' sisters, Sarah E. Ringwalt and Emma A. Wenger. Both, however, *died* before the execution of the probated will of August 5, 1958. Does the fact then that testatrix in the earlier will bequeathed the residuary estate subject to the two life esates and in the later will bequeathed the rsiduary state, payable immediately, cause all charitable gifts in the later will to fail? Since testatrix' two sisters died before the execution of the later will, would the quoted section of the Wills Act have compelled this testatrix to give life estates to two persons whom she had no desire to benefit, or to her sisters who were then deceased, in order to sustain the gift to the church of her choice? The sisters, being deceased, testatrix pursued the course not uncommon and not unusual of eliminating them entirely from her testamentary disposition.

This same question arose in Denney Estate, 7 Fiduc. Rep. 610, in which President Judge Boyle, of the Orphans' Court of Allegheny County, held, at page 614, that: "The Act [§7 (1), herein quoted] does not require a testator to give a life estate to a dead man in order to save a charitable gift made within thirty days of his death."

In McGuigen Estate, 388 Pa. 475, it is stated, pages 481, 482:

"Irrespective of any principle or canon of construction, it is clear that section 7(1) of the Wills Act of 1947 should be liberally construed in order to effectuate the object of the Act which was to modify the prior harsh law and to promote justice: *Martin Estate*, 365 Pa. 280, 283, 74 A. 2d 120; Section 58 of the Statutory Construction Act of 1937, 46 P.S. §558, which by its terms includes future acts such as the Wills Act of 1947 and requires a liberal instead of a strict construction thereof in order 'to effect their objects and to promote justice'."

We thus hold, for the reasons stated, that the First Methodist Church of Lancaster, having been given one third of the residuary estate under the prior will, is now entitled to receive the lesser amount of one fourth of the residuary estate under the later probated will.

Our holding appears to be at variance from that reached by Judge Lefever, of the Orphans' Court of Philadelphia County, in Benner Estate, 6 Fiduc. Rep. 150, where the will, executed within 30 days of death, contained a gift to a charity of 10 per cent of the residue outright, whereas in the earlier will there was a gift of one eighth of the residue preceded by two life estates in the whole of the residue. But in that case at least one of the two persons named as life tenants in the earlier will was living at the testatrix' death. See also the observation in Bregy's Intestate, Wills and Estates Acts of 1947, at page 2463, illustration 3.

It is contended on behalf of the Methodist Church Home in Cornwall, Lebanon County, that it is the intended beneficiary of the gift to the Cornwall Methodist Home of one fourth of the residuary estate and that such gift to it is valid by reason of testatrix in her prior will having given one third of the residuary estate to the Methodist Home for the Aged, at Philadelphia. It is contended that the gift is saved notwith-

standing the fact that the prior will did not contain a gift to the same legatee.

. Testimony was taken at the audit. From it and the record we find that the intended beneficiary described in the earlier will as the "Methodist Home For The Aged, presently located at Edgeley and Belmont Avenues, Philadelphia, Pennsylvania," is the Methodist Episcopal Home for the Aged of Philadelphia, located at Belmont and Monument Avenues, Philadelphia. That home was incorporated by the Court of Common Pleas of Philadelphia County on October 12, 1865, under the name of "The Ladies United Aid Society of the Methodist Episcopal Church in the City of Philadelphia." The change of name to its present one was effected on July 19, 1897. The corporation's purpose, as set forth in an amendment to its charter is: "To provide for the aged members of the Methodist Episcopal Church and any other aged persons whose needy circumstances require such aid, a comfortable home with clothing, employment and religious privileges, also to raise funds for its support."

The Cornwall Methodist Home, the beneficiary in the later will, is properly known as "The Methodist Church Home in Cornwall, Lebanon County, Pennsylvania." It was incorporated as a nonprofit corporation by the Court of Common Pleas of Lebanon County on January 24, 1949. Its purposes as set forth in its charter are: "To provide for Retired Ministers of the Methodist Church and their wives, Retired Accepted Supply Ministers of the Methodist Church and their wives, widows of ministers of the Methodist Church, other aged men and women who are members of some Methodist Church within the bounds of the Philadelphia Conference of the Methodist Church and other deserving and aged persons a comfortable Home in which religious activities and projects may be carried on; and to further other religious and charitable work."

Both the Philadelphia home and the Cornwall home are in the Philadelphia Conference of the Methodist Church, an area extending from the Delaware River to the Susquehanna River. The organization of the Cornwall home was under the supervision of the Philadelphia home. The treasurer, who is also a trustee of the Philadelphia home, is a trustee of the Cornwall home. At the time of the hearing there were 193 guests at the Philadelphia home, of which 187 were members of the Methodist Church. There were 122 guests at the Cornwall home, of which 105 were members of the Methodist church. While both homes admit as guests persons residing anywhere in the Philadelphia Conference, as a practical matter those persons who reside closer to Philadelphia are admitted to the Philadelphia home and those residing closer to Cornwall are admitted to the Cornwall home.

In King Estate, 7 Fiduc. Rep. 252, testatrix devised property in an earlier will for a "home for worthy white girls and women without homes or close relatives." In the later probated will, she devised the same property "to be used for a home for old people." It was held that the gift in the later will was not saved from invalidity under section 7(1), since the provisions of the two wills were not for substantially the same charitable purposes.

Mr. Bregy notes, at page 2462: "(1) The object of gift might be changed. In this respect the statute will operate to save the gift only if the gift in each instrument is 'for substantially the same religious or charitable purpose.' This intentionally general standard should leave considerable leeway to the court in applying the statute. It is correspondingly difficult to predict exactly how much leeway will be permitted. A gift to X hospital for its general endowment would undoubtedly be 'substantially the same' as a gift to the X hosptial for a memorial bed. A gift to the X

Committee for Emancipation of the Working Man on the other hand could scarcely be termed substantially the same as a gift to the Y Art Museum. Somewhere between these cases, the line must be drawn."

Section 7(1) of the Wills Act of April 24, 1947, P. L. 89, does not require that the legatee or devisee of the religious or charitable gifts be identical in both wills. The gifts, however, must be "for substantially the same religious or charitable purpose." We are of the opinion that the facts here present meet the conditions prescribed by the quoted section of the act, in that the gift to the Cornwall home in the later will is substantially for the same charitable purpose as the gift to the Philadelphia home in the earlier will. Accordingly, we rule that the gift to the Cornwall Methodist Home in the later probated will is valid.

In reaching the conclusion that both the First Methodist Church and the Methodist Church Home in Cornwall are entitled to distributive shares, we do not think that the provision in the earlier will for the disposition of the remainder interest in the event that the charitable gifts were invalid by reason of death within 30 days is a condition which precludes them from a distributive share. The invalidity would arise not by anything testatrix stated in her earlier will, but by reason of her death within the prescribed period.

There remains for consideration the disposition of the share of the residue given to the Lancaster General Hospital. Section 14, clause 10, of the Wills Act of 1947, 20 PS §180.14 (10), provides that the other residuary legatees take the share which is void "in proportion to their respective shares or interests in the residue." While the two valid charitable gifts are thus increased, the increase results not by any act of the testatrix but automatically by operation of law: York Estate, 3 Fiduc. Rep. 1; Denney Estate, supra.

*H. Clay Burkholder* and *Windolph, Burkholder & Hartman,* for exceptant.

*Harold W. Budding, John B. Rengier,* and *Rengier & Musser,* contra.

## Opinion Sur Exceptions

BOWMAN, P. J., March 31, 1960.—Mary A. H. Yeakel died testate August 31, 1958, having by her last will and testament, dated August 5, 1958, and duly probated, bequeathed, inter alia, one-fourth of her residuary estate to the Cornwall Methodist Home at Cornwall. This legatee is properly known as "The Methodist Church Home in Cornwall, Lebanon County, Pennsylvania." By a prior will, dated August 2, 1951, which was produced in legible condition at the audit, the execution of which was proven by the two subscribing witnesses, she bequeathed one-third of her residuary estate to the Methodist Home for the Aged, Philadelphia. The gift of the residuary estate in the prior will followed life estates to her two sisters, both of whom died before the execution of the later and probated will.

As hereinbefore appears, testatrix died within 30 days of the execution of the later will. Under the provisions of section 7 (1) of the Wills Act of 1947, 20 PS §180.7 (1), we awarded a share of the residuary estate to the Cornwall Home in an adjudication filed February 4, 1960, since we found that the gift in the later will to the Cornwall Home was for substantially the same charitable purpose as the gift to the Philadelphia home in the earlier will. Paul H. Yeakel, who by the later will is entitled to a share in the residuary estate, filed exceptions to the adjudication. He contends that we erred in our construction and application of that section of the Wills Act of 1947. He claims that the gift in the prior will to the Philadelphia Home is "neither identical with nor for substantially the same pur-

pose" as the gift to the Cornwall home in the later will. We have carefully considered his exceptions and reviewed our findings and conclusions which are fully set forth in the opinion accompanying the decree of distribution in the adjudication. Our review discloses no error which would justify the changing of the conclusions therein reached. His exceptions are therefore dismissed . . .

And now, March 31, 1960, for the reasons stated, the adjudication filed February 4, 1960, as amended, is confirmed absolutely.