## Kerr Estate

*Horace G. Ports, Paul E. Clouser, Thomas Steigle* and *Henry Lowet,* for petitioner.

*Nevin Stetler, William H. Kain, Norman E. Olewiler, Jr., J. Ross McGinnis* and *William H. Neff, Jr.,* for respondents.

KOHLER, P.J., June 10, 1965.—The executor under the will of Charles M. Kerr, deceased, and as trustee of an *inter vivos* trust created by said decedent in his lifetime, joined with three charitable organizations who are remaindermen beneficiaries under said trust after the expiration of certain life estates, instituted this proceeding for a declaratory judgment pursuant to the Act of June 18, 1923, P.L. 840, as amended and supplemented, 12 PS §831, et seq.

The petition seeks a declaratory judgment that the provisions of item 6 (b) of the deed of trust, as amended by decedent in his lifetime, validly and effectively create remainder interests to the three charities and that said charities will be entitled to the remaining corpus of the trust upon termination of the several life estates.

This proceeding was engendered by a ruling from the United States Internal Revenue Service that the attempted transfers of remainder interests to the three charities; namely, Princeton University, Mercersburg Academy, and Presbyterian Home of Central Pennsylvania, "are void because provisions for the same

are not timely made in accordance with the Act of 1939, May 16, P.L. 141, par. 1, and/or the Wills Act of 1947, sec. 7 (1)." The statutes referred to are those which invalidate certain transfers for religious or charitable purposes unless made within a certain prescribed period prior to the death of the transferor. On its Federal estate tax return the executor had claimed credit for charitable gifts and bequests in the amount of $253,700, the calculated present value of the remainder passing to the respective charities after the deaths of the intervening life tenants. Upon denial of said credit, under the ruling aforementioned, the Internal Revenue Service assessed a Federal estate tax deficiency in the sum of $93,387.92. Executor has instituted suit in the Tax Court of the United States contesting such ruling and deficiency assessment.

The problem arises because decedent executed the deed of trust, and his last will containing "pour over" provisions to the trust, both on December 30, 1959, and then died on January 29, 1960.

Petitioners seek a declaratory judgment from this court that the period of time elapsing between execution of the transfer documents and decedent's death does not violate the two statutes cited by the taxing authority, and that the charitable transfers are therefore valid. If such judgment is rendered, it is their theory that the Tax Court, under the ruling of Darlington's Estate v. Commissioner of Internal Revenue, 302 F. 2d 693 (1962), is bound by the determination of our state court and will uphold the validity of the transfers to charity.

Pursuant to section 707 of the Orphans' Court Act of August 10, 1951, P. L. 1163, as amended by the Act of August 13, 1963, P.L. 670, and the Act of July 25, 1963, P.L. 305, we authorized the Internal Revenue Service and the Commonwealth, both as parens patriae of charitable trusts and as the sovereign power

entitled to the collection of inheritance taxes through its Department of Revenue, to appear in the proceedings and personal service of a copy thereof was made upon each agency. Although acknowledging such service, neither of such governmental agencies has entered an appearance.

After thorough investigation concerning all the other parties in interest possibly affected by the proceedings, both under the intestate laws, if an intestacy of any invalid remainder interests was ultimately declared, and under the terms of the deed of trust and will of decedent, we believe that all necessary parties were joined and properly served. All are *sui juris*, and all, excepting two first cousins once removed, have entered appearances through counsel of record. All such appearing parties participated in oral argument and filed written briefs, through their respective counsel, seeking judgment that the charitable gifts are invalid because in violation of the two statutes cited by the taxing authority. Three of decedent's first cousins joined in a common answer to the petition setting forth such position and further asking for judgment that the first cousins who are "class" beneficiaries under the deed of trust are entitled to the alleged invalid remainder interests. Another first cousin, in his capacity as executor of the will of an aunt, now deceased, who survived decedent, filed an "Answer and Demurrer" which likewise seeks determination that the remainders to charity are void, and further judgment that decedent died intestate as to such remainder interests.

There is no factual dispute. At oral argument, held on April 20, 1965, certain facts were stipulated, particularly with reference to decedent's blood relatives as of the date of his death.

We summarize additional facts as follows:

Decedent died on January 29, 1960. On December 30, 1959, he executed the last will and testament pro-

bated after his death, and, on December 30, 1959, the same date, executed an amendment to an inter vivos trust he had originally executed on July 8, 1943. The amendment of December 30, 1959, contained entirely new dispositive provisions effective upon settlor's death, presumably because his wife and only child, the original beneficiaries under the trust, had died.

The will bequeathed decedent's residuary estate "to the then Trustee under a Deed of Trust made by me to The York National Bank and Trust Company dated July 8, 1943, and the amendments thereto, effective as of the date of my death, the same to be added to and form a part of the trusts thereunder." Under our adjudication of the accounting of the executor in the testamentary estate, made by us on December 4, 1961, we awarded the trustee, under the foregoing provision, the sum of $431,147.37.

The amendment of December 30, 1959, to the deed of trust provides, inter alia as follows:

"(6.) The remaining corpus of said trust shall be held for the following uses and purposes:

"(a) To pay the net income therefrom in convenient installments to my first cousins, or their issue per stirpes.

"(b) Upon the death of my last surviving first cousin, then the trust shall terminate and the remaining corpus, together with any other funds which may have come into the hands of the trustee, either by transfer from other trusts herein provided, or from the Executor of my last Will and Testament, shall be distributed as follows:

"25% to Princeton University

"25% to Mercersburg Academy

"50% to the Presbyterian Home of Central Pennsylvania."

Under our adjudication of an interim accounting of the trustee, made by us on September 13, 1960, we

found the accounting value of the assets placed in trust by decedent in his lifetime to be the sum of $122,273.09.

In both the aforementioned adjudications we made the following observation:

"A determination of any question of the thirty day restriction on testamentary gifts under section 7(1) of the Wills Act of 1947, 20 PS §180.7(1) and under the Act of May 16, 1939, P. L. 141, 10 PS §17, shall not be made until the time of distribution arrives at the death of the last surviving first cousin. A possible failure of charitable bequests can have no effect on prior provisions of the instrument of trust. Cf. Slater's Estate, 265 Pa. 88."

Decedent died unmarried, and without issue, brothers, sisters, parents or grandparents to survive him.
. . .

None of the parties respondent contests the availability of declaratory judgment as sought by petitioners, but all the relatives of decedent, through counsel, seek judgment that the charitable gifts are void under the statutes cited by the Internal Revenue Service. However, since jurisdiction of the subject matter cannot be conferred upon the court by the parties, we must first decide whether or not we have such jurisdiction.

In a long line of decisions, Pennsylvania courts have consistently held that rights in remainder will not be determined until they vest in possession, or are intended to vest in possesion, at the death of the life tenant. A list of the many cases so holding is collected in 3 Hunter O. C., 2d Ed., Judgments, Vol. 3, p. 432, sec. 1(h). Doubtless, it would be more convenient for executors, trustees, and beneficiaries to have a will or trust construed in advance, but this is by no means an adequate reason. Such matters are adjudicated at the audit of the fiduciary's account, in this case at the death of the last surviving first cousin when the trust terminates.

This is normally the legal and appropriate time to raise the question which the parties seek to have determined now. Hence our "observation" in each of the adjudications aforementioned, heretofore quoted.

Further, our Supreme Court in Straus' Estate, 307 Pa. 454 (1932), and in Miller Trust, 351 Pa. 144 (1945), indicated that neither transfer inheritance tax problems nor Federal tax problems will be aided by advance determination of property rights.

However, the rather unusual factual situation before us must be examined in the light of some recent developments affecting the general rule heretofore stated.

First, the Legislature has seen fit to supplement and amend our Uniform Declaratory Judgments Act of 1923, supra, by two additions in 1963. As so amended, the pertinent provisions are now as follows:

"Section 4. Any person interested, as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto—

"(a) . . .

"(b) . . .

"(c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

"Section 6. Discretionary. Relief by declaratory judgment or decree may be granted in all civil cases. . . . (3) where in any such case the court is satisfied that a party asserts. a legal relation, status, right or privilege in which he has a concrete interest and that *either . . . or (ii) that there is an uncertainty with respect to the effect of such asserted relation, status, right, or privilege upon the determination of any tax imposed or to be imposed by any taxing authority, in-*

*cluding the United States, any state and any political
subdivision thereof . . ."*

"Section 11. . . . *In any proceeding which involves
the effect of any asserted legal relation, status, right or
privilege upon the determination of any tax, the appro-
priate taxing authority shall be served with a copy of
the proceeding, but if such taxing authority does not
enter its appearance, the requirements of this section
shall nevertheless be satisfied if the court considers that
the interests of the taxing authority are adequately
represented.*"

The italics above represents the legislation embodied
in the Act of July 25, 1963, P. L. 305.

Secondly, in Johnson Estate, 403 Pa. 476, 171 A. 2d
518 (1961), our Supreme Court held that the personal
representative of the estate of a possible remainderman
could petition for a declaratory judgment to determine
whether the interest of the remainderman was vested
or contingent, even during the continuance of the pre-
ceding life estate. It was held that declaratory judg-
ment was available regardless of the availability of the
other future remedy; namely, the filing of the trustee's
account at an uncertain time in the future when the
life tenant died.

In Mohney Estate, 416 Pa. 107 (1964), Chief Justice
Bell repeated the admonition against the availability of
declaratory judgment, as follows:

"The principles to guide the lower courts in deter-
mining whether or not a declaratory judgment pro-
ceeding should be entertained was recently clarified
by this Court in McWilliams v. McCabe, 406 Pa. 644,
179 A. 2d 222 (1962). Therein we declared, inter alia,
(1) that a declaratory judgment proceeding is not an
optional substitute for established and available rem-
edies; (2) that it should not be granted where a more
appropriate remedy is available; (3) that it should not
be granted unless compelling and unusual circumstan-

ces exist; (4) that it should not be granted where there is a dispute of facts, or such controversy may arise; and (5) that it should not be granted unless there is a clear manifestation that the declaration sought will be of practical help in terminating the controversy."

In the matter before us, (1) there is no established and presently available remedy to have the validity of the charitable gifts adjudicated under state law, which is the governing law to determine their validity, except this proceeding; (2) there is no more appropriate remedy available; (3) compelling and unusual circumstances do exist when almost seventeen percent of the trust corpus may be appropriated for death taxes, depending upon the proper construction of the two state statutes; (4) there is no factual dispute, the sole question is a matter of law; and (5) under the ruling of Darlington's Estate v. Commissioner, supra, the declaration sought will be of practical help in terminating the controversy. In Darlington, our Third Circuit Court of Appeals stated:

"We have three times held that, if federal law makes federal tax treatment depend, without further qualification, upon who has what rights in an estate under state law, a state court's adjudication which is final in its effect upon those rights must also be taken as final as to the tax matters which depend upon those rights."

We have examined the two most recent pronouncements of our Supreme Court regarding declaratory judgments in the orphans' court; namely, Sheldrake Estate, 416 Pa. 551 (1965), and Mohney Estate, supra. In both, declaratory judgment was denied for the reason that another available and appropriate remedy existed; namely, the audit of the fiduciary's account. However, in neither case was the construction or validity of a future interest involved, as in the matter before us. Until the death of the last surviving first cousin, we cannot adjudicate the validity of the charitable re-

mainders at an audit of the trustee's account. The liability of the corpus for Federal estate tax must be determined now, and the tax must be paid now, and cannot abide such future event. Our research, and the research of numerous able counsel in this proceeding, has disclosed no Pennsylvania authority, to which the Tax Court could look for guidance as to the applicable state law, construing the exact number of days which must intervene between the execution of the instruments and death, under the two state statutes cited by the taxing authority.

To paraphrase the concluding paragraph of Justice Jones' opinion in Johnson Estate, supra:

In the instant situation there is an actual controversy as to the right of decedent's charitable gifts to qualify as charitable deductions under the Internal Revenue Code, and that right depends upon State law; the determination of such right does not depend upon the happening of any event or events which may not occur; all parties in interest are sui juris and before the court; to postpone construction of this will and trust to an uncertain time in the future when an audit of the trustee's account can be held would benefit no one and could harm the Kerr trust estate. In their present posture the instant circumstances present a situation where declaratory judgment offers the only reasonable and practical solution to settle the controversy between the parties and to render justice now rather than at some uncertain time in the future.

Since all respondent parties in interest, save two, have appeared in the proceeding represented by able counsel, have presented oral arguments and submitted briefs attempting to sustain the invalidity of the charitable transfers, upholding the position of the taxing authority, we find the interests of the Internal Revenue Service and the Pennsylvania Department of Revenue are adequately represented.

In what we deem to be a proper exercise of our judicial discretion, we entertain declaratory judgment as proper and appropriate for this proceeding.

We next turn to the question concerning the validity of the remainder interests to the charitable institutions contained in decedent's inter vivos trust and will. Do they violate the two "mortmain" statutes referred to by the taxing authority, or were they timely made thereunder?

The two statutes cited by the taxing authority and the respondents to this proceeding are as follows:

Act of April 24, 1947, P. L. 89, sec. 7(1), 20 PS §180.7(1) (hereafter called the "Wills Act") :

"Death Within Thirty Days—Religious and Charitable Gifts. Any bequest or devise for religious or charitable purposes included in a will or codicil executed within thirty days of the death of the testator shall be invalid unless all who would benefit by its invalidity agree that it shall be valid. The thirty day period shall be so computed as to include the day on which the will or codicil is written and to exclude the day of death."

Act of May 16, 1939, P. L. 141, 10 PS §17, (hereafter called the "Gift Act") :

"Any gift for religious or charitable uses hereafter made to take effect in possession or enjoyment at or after the death of the donor shall be void unless made at least thirty days before such death, and any promise hereafter made to give real or personal property for religious or charitable uses shall be unenforceable unless made at least thirty days before the death of the promisor. The thirty day periods provided for in this act shall be so computed as to exclude the first and include the last day thereof."

Obviously, it is the manner of computation of the 30-day periods in the foregoing statutes which is the issue between the parties. The parties who would bene-

fit by the invalidity of the remainders, under the Wills Act, have not agreed that they shall be valid. There was no evidence of a prior will or codicil containing substantially the same charitable provisions as provided for in a subsequent sentence of the section of the Wills Act above quoted. Further, under the terms of the inter vivos trust, the charitable gifts were not effective until the death of the settlor.

The problem is one of statutory construction. In McGuigen Estate, 388 Pa. 475, 131 A. 2d 124 (1957), Justice (now Chief Justice) Bell reiterated the following quotation from Martin Estate, 365 Pa. 283, 74 A. 2d 122, wherein it was stated:

"When an act is changed or repealed and a new or similar act enacted to take its place, or when the words or meaning of a statute are not explicit or clear, the intention of the legislature is to be gathered not only by a consideration of the new act but also by examining the occasion, reason or necessity for the law; the circumstances under which it was enacted; the mischief, if any, to be remedied; the object to be obtained; and the old law upon the subject. Phipps v. Kirk, 333 Pa. 478, 5 A. 2d 143; Orlosky v. Haskell, 304 Pa. 57, 66, 155 A. 112.

"Moreover, in ascertaining the legislative meaning, while what is said in debate is not relevant, the report of a legislative commission or a Senate or House committee may, if obscurity or ambiguity exists, be considered: National Transit Co. v. Boardman, 328 Pa. 450, 197 A. 239; Tarlo's Estate, 315 Pa. 321, 172 A. 139."

Coincidentally, McGuigen's Estate, supra, wherein the foregoing quotation was repeated, involved a construction of the identical section of the Wills Act now under consideration.

Since both the Wills Act and Gift Act, which we are now called upon to construe, were enacted to take the

place of former legislation covering the same subject matter, the historical development of each is thus an important subject of inquiry.

The restrictions upon charitable gifts have their origin in the early English Mortmain Statutes. These statutes were never a part of our common law. Pennsylvania first adopted such restrictions in the Act of April 26, 1855, P. L. 328, sec. 11, later amended in 1911 to define a term not here relevant, and finally repealed by section 2 of the Gift Act, supra, which replaced it as to inter vivos transfers. The relevant provisions of the act of 1855, as it existed from that date to 1939, are:

"No estate, real or personal, shall hereafter be bequeathed, devised, or conveyed to any body politic, or to any person in trust for religious or charitable uses, except the same be done by deed or will, attested by two credible, and, at the time disinterested witnesses *at least one calendar month before the decease of the testator or alienor* . . ." (Italics supplied.)

The said Act of 1855, supra, had been repealed, so far as it related to estates bequeathed or devised, by the Wills Act of June 7, 1917, P. L. 403, which latter act has been repealed by the Wills Act of April 24, 1947, herein called Wills Act, supra. The Wills Act of 1917, replaced by the present Wills Act, under construction, provided as follows, in section 6 thereof:

"No estate, real or personal, shall be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except the same be done by will attested by two credible and . . . disinterested witnesses, *at least thirty days before the decease of the testator* . . ." (Italics supplied.)

Note: The Report of the Commission appointed to codify and revise the Law of Decedents' Estates (1917) stated: "They (commissioners) have, however, substituted for the period of one calendar month, that of thirty days, for the reason that the calendar months

of the year do not contain the same number of days, and the provision should be uniform."

Thereafter, by the Act of July 2, 1935, P. L. 573, it was amended by removing the requirement of witnesses; and, by the Act of May 16, 1939, P. L. 141, further amended, and which act is the immediate predecessor to the present Wills Act, to read as follows:

"No estate, real or personal, shall be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except the same be done by will at least thirty days before the decease of the testator, *which period shall be so computed as to exclude the first and to include the last day thereof* . . ."

Summarizing the foregoing legislative history, it may be observed that: (1) the original Act of 1855 covered both lifetime transfers and wills; (2) that the measure of time was "one calendar month"; (3) that in 1917, as to wills, the measure of time was changed to "30 days"; (4) that in 1935, as to lifetime transfers, the measure of time was changed to "30 days"; and (4) that in 1939, as to both lifetime transfers and wills, the computation of 30 days was prescribed "as to exclude the first and include the last day thereof."

As early as 1884, in Carl's Appeal, 106 Pa. 635, in speaking of the Act of 1855, supra, it was stated at page 642:

"It will be seen at once that the act of signing and attesting is the fact which must transpire more than one month before the other fact, to wit, the death of the testator occurs. Between these two *facts* an interval of time, one month, must elapse."

In Socks's Estate, 15 Pa. Superior Ct. 281 (1900), the will was dated July 11th and the testatrix died August 10th. The court held that "one calendar month" meant 31 days, and the day on which the will was executed had to be at least 31 days before the date of death, hence the statute was violated.

Six years later, in Gregg's Estate, 213 Pa. 260, 62 Atl. 856 (1906), the will was executed on October 8th, and the testator died on November 8th. Our Supreme Court held that "one calendar month" meant that at least 31 days must here *intervene between* the date of execution and the date of death. Philip A. Bregy, Esq., Intestate, Wills and Estates Act of 1947, at page 2454, footnote 3, comments upon this case as "holding that a month means a month plus a day—a conclusion which only the most highly trained legal mind would be capable of reaching."

Thereafter, as heretofore mentioned, the legislature reduced "one calendar month" to "30 days" in the Wills Act of 1917, supra, and further defined the method of computation "to exclude the first and include the last day thereof," as to both wills and lifetime gifts, by companion statutes enacted on the same day in 1939. This action by the Legislature would appear to demonstrate a legislative intent to liberalize the prohibition against certain charitable transfers, contained in the Act of 1855, supra, as construed by Gregg's Estate, supra, so that only 29 days must intervene between the date of execution and the date of death. The intervention of 29 calendar dates between the two "events," in our opinion, satisfies the Gift Act and the Wills Act of 1917, as amended in 1939, supra, as having been made "at least 30 days before the decease of the testator" and so computed "to exclude the first and include the last day thereof."

If one attempts to analyze the grammatical construction of the statutes a maze of confusion in semantics results. As a consequence, the written briefs are replete with contrary constructions depending upon whether the date of death is the "first" or "last" day in the computation within the meaning of the statutes, and depending whether the statutes mean the count is to be made retrospectively from the date of death or pro-

spectively from the date of execution of the document.

As we understand the various constructions argued by respondents, the net result of all of them is that 30 calendar days must intervene between the date of execution of the document and the date of death. Since the law does not recognize fractions of days, such construction ignores the statutory command to "include" and "exclude," or, if abiding by such command, changes the measuring device back to 31 days as in the old Act of 1855, supra.

The comment of the Joint State Government Commission to its draft of section 7(1) of the Wills Act of 1947, in comparing the new draft with the former legislation, states:

" 'The thirty-day period shall be so computed as to include the day on which the will or codicil is written and to exclude the day of death' is necessary because under the Statutory Construction Act 'Whenever the last day of any such period shall fall on Sunday, or any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.' In some instances the Statutory Construction Act allows thirty-one days."

Therefore, it would appear that the commissioners themselves construed "the last day thereof," in the former legislation, to be referring to the date of death. In giving meaning to such construction, we would commence the 30-day measuring device on January 29, 1960, the day of Mr. Kerr's death (last day), and count retrospectively. The thirtieth day of the period then falls on December 31, 1959. The trust having been executed on December 30, it falls outside the prohibition as having been executed "at least thirty days before such death."

It has been argued by some of the respondents that the Kerr trust is, in effect, a testamentary document and must be governed by the Wills Act and not the Gift

Act. This ignores the plain mandate of the Gift Act that it applies to "Any gift . . . made to take effect in possession or enjoyment at or after the death of the donor."

We do concur with respondent's view that section 7(1) of the Wills Act of 1947, governs the validity of the charitable interests in all of the assets in the Kerr testamentary estate irrespective of the "pour-over" provision to the living trust. The latter was incorporated by reference into the will just as effectively as if the charitable interests had been literally specified in the will. Any other conclusion would render nugatory the prohibition in the Wills Act by enabling a testator, importuned by charities, to do indirectly that which the law prohibits to be done directly.

We conclude, therefore, that the inter vivos trust amended by Mr. Kerr on December 30, 1959, does not violate the Act of May 16, 1939, P. L. 141 (Gift Act), and that the remainder interests to charities, in the corpus of the trust on that date, are valid.

Our next inquiry is directed to whether the Kerr will complies with section 7(1) of the Wills Act of 1947, supra. Our conclusion depends upon whether the new act changed the former method of computation as set forth in the Wills Act of 1917, as amended by the act of 1939, supra, which computation was similar in phraseology to the Gift Act. The new phraseology is that the charitable bequest shall be invalid "if executed within thirty days of the death . . . so computed as to include the day on which the will or codicil is written and to exclude the day of death."

The thrust of the argument that the present act is violated is that the date of death, January 29, must be excluded, the computation must be made retrospectively commencing with January 28, and that the will then was executed on the thirtieth day and which is "within thirty days" under the meaning of the statute.

If such is the proper construction of the present Wills Act, it will then mean, as to wills, 30 calendar days must *intervene between* the date of execution of the will and the date of death.

Philip A. Bregy, Esq., employed as an associate research consultant to the Joint State Government Commission, which drafted the Wills Act of 1947, in his book on the act, supra, in referring to the section under consideration, states at page 2452:

"The first two sentences are merely a stylistic revision of the Act of 1917, as amended."

The first two sentences, of course, contain the specified prohibited period of 30 days and their method of computation.

Further, it must be noted that insistence upon commencing the computation with the date of death as the beginning point, and making the computation in retrospect to the date of the will, ignores the heading of section 7(1) which reads: "death within thirty days." Under section 54 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §554, such heading may be used as an aid in construction. This would indicate that the subject matter is death *following* the execution of the will, and not the execution of the will in retrospect from the death. This is concomitant with the statutory mandate to "include the day on which the will or codicil is written" because, under such prospective method of computation, the date of the will is always included in the computation as required by the statute.

Applying such prospective method of calculation to the Kerr will, and including the date of the will as the first day of the computation, we find that the thirtieth day falls on January 28, 1960. The Kerr death having occurred on the following day, January 29, the will was not executed "within thirty days of the death of the testator" as prohibited in the statute.

We are fortified in our conclusion that the foregoing construction is proper because respondent's construction means that 30 calendar days must intervene between the date of the will and the date of death. In order to arrive at such conclusion, we must ignore the plain mandate to "include" and "exclude" certain days, or else we must find a legislative intention to return to the more strict requirements of the Wills Act of 1917, prior to its liberalizing amendment of 1939. This we cannot do or find. The legislative history of the prohibition against charitable transfers has been one of relaxation of requirements rather than one of "tightening the reins." Our Supreme Court set the tone of interpretation of section 7(1) of the Wills Act of 1947, in McGuigen Estate, 388 Pa. 475, 131 A. 2d 124 (1957), by stating:

"Irrespective of any principle or canon of construction, it is clear that section 7(1) of the Wills Act of 1947 should be liberally construed in order to effectuate the object of the Act which was to modify the prior harsh law and to promote justice: . . ."

Under the provisions of section 51 of the Statutory Construction Act, supra, 46 PS §551, when the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters, the former law, if any, including other laws upon the same or similar subjects, the consequences of a particular interpretation, and the contemporaneous legislative history. Thus we are unable to conclude that the word "within" under the Wills Act of 1947, was intended to have a different meaning than the word "before" as used in the prior legislation, nor to enlarge the measuring unit back to 31 days.

Furthermore, under section 62 of the Statutory Construction Act, supra, 46 PS §562, laws or parts of laws are in pari materia when they relate to the same class of persons or things, and they shall be construed

together, if possible, as one law. We believe that the Gift Act and section 7(1) of the Wills Act of 1947 are in pari materia. Our conclusion upon their respective proper construction makes them coincide as one law, as they were indeed under the Act of 1855, supra.

Under both the Gift Act and the Wills Act, when the day on which occurred one of the two important events is included in the count, irrespective which event is so included, only 29 calendar days must intervene between the two events.

And now, to wit, June 10, 1965, upon consideration of the petition and answers filed in the case, after hearing and argument thereon, it is hereby ordered, adjudged and decreed that the provisions of Item 6(b) of a trust agreement executed by Charles M. Kerr on July 8, 1943, amended in writing on December 30, 1959, and the last will and testament of the said Charles M. Kerr, now deceased, were timely made in accordance with the Act of May 16, 1939, P. L. 141, and/or the Wills Act of 1947, sec. 7(1), and that valid and effective charitable remainders, after the termination of the several life estates, are therein created for the benefit of Princeton University, Mercersburg Academy, and the Presbyterian Home of Central Pennsylvania, in the respective proportions therein contained.