O'Brien Estate

*Joseph E. Greene, Jr.*, for petitioners.

*John C. Tuten, Jr., Charles A. Wolfe, Frances Woerner* and *W. Wesley Nagle*, in support of validity of remainder in codicil.

*Herbert S. Riband, Jr., William H. S. Wells*, and *Martin J. Levitas*, contra.

*James W. Sutton, Jr.*, Assistant Attorney General, for Commonwealth.

PAWELEC, J., March 30, 1973.—Elizabeth Jamison O'Brien, a widow, died October 20, 1966, leaving as her next of kin her sister, Isabel Jamison Silvester. Testatrix left a will dated August 12, 1964, and a codicil dated October 17, 1966, which were admitted to probate by the Register of Wills of Philadelphia County on October 28, 1966.

The First Pennsylvania Banking and Trust Company and H. Byron Gervin were named co-executors. They are the petitioners before the court on this matter.

In the third paragraph of her will, testatrix disposed of her residuary estate as follows: In section A of said paragraph, she made nine pecuniary bequests to named individuals; in section B she provided as follows:

"The remainder of my residuary estate I give to my Trustees, hereinafter named, In Trust, to divide the principal into two equal shares and

"1. To hold one-half thereof In Trust, to keep the principal invested and to distribute the net income therefrom at least quarter-annually in equal shares to my sister, ISABEL JAMISON SILVESTER and to my cousin, GEORGE C. ARNOLD, during their respective lives, and all of the income to the survivor of them during the life of the survivor, and on the death of the survivor this trust shall terminate and the principal shall be distributed to THE PHILADELPHIA FOUNDATION.

"2. To hold the other half thereof in trust, to keep the principal invested and to pay the net income therefrom, at least quarter-annually, in equal shares, to such of the following named persons as are living on each date fixed by my Trustees for the distribution of income:

"EDNA MOORE

"CHRISTINE SMOCK

"SARA JANE HIRST

"BLANCHE GIBSON

"MOLLY BARNEY

"until the death of the last survivor of them when the principal of this trust shall be distributed as follows:

"To the FIRST PRESBYTERIAN CHURCH OF PHILADELPHIA, Twenty-five Thousand Dollars ($25,000)

"To the PHILADELPHIA FOUNDATION, the remaining principal."

In the codicil, testatrix revoked the third paragraph of her will and in lieu thereof provided as follows: In section A she made the same nine pecuniary bequests to the same individuals and then she added the names

of the five individuals who were the income benefici-.
aries of one of the two trust funds set up in the will.
She bequeathed to each of the said five the sum of
$5,000. She then provided as follows:

"B. I devise and bequeath the residue of my estate,
of every nature and wherever situate, to my Trustees
hereinafter named, IN TRUST, to keep the principal
invested, and to distribute the net income from it, at.
least quarter-annually, in equal shares to my sister,
ISABEL JAMISON SILVESTER, And my cousin,
GEORGE C. ARNOLD, and, after the death of one, to
pay all of the income to the survivor, and on the death
of the survivor, this Trust shall terminate and the prin-
cipal shall be distributed as follows:

"To the FIRST PRESBYTERIAN CHURCH OF
PHILADELPHIA, Twenty-five Thousand Dollars
($25,000.).

"To the PHILADELPHIA FOUNDATION, the
remaining principal."

The executors filed their account and it was con-
firmed by adjudication of Burke, J., on September 8,
1969. In accordance with the schedule of distribution
directed by the adjudication and approved on Decem-
ber 30, 1969, the balance of principal was awarded
to the trustees for the purposes directed in the codicil.
Isabel Jamison Silvester died March 28, 1968. Since
that date, the entire income of the residuary trust has
been paid to George C. Arnold.

The executors also filed a Federal estate tax return
claiming credit for the gifts and bequests passing to
the respective charities after the death of the two
income beneficiaries. The Internal Revenue Service
denied the credit and assessed a deficiency on the
theory that since the remainder gifts to charities were
made in the codicil, which was executed three days
prior to the death of testatrix, and since they were not

in accord with the Wills Act of 1947, sec. 7(1), they were invalid. The Internal Revenue Service asserted that the codicil revoked the residuary provisions of the will and, thus, an intestacy would result after the death of the two life tenants.

Isabel Jamison Silvester, who would be the intestate heir of Elizabeth Jamison O'Brien, left a will in which she directed that her residuary estate be held in trust with income payable to certain life tenants and then the principal to be distributed to certain charities. These charities are participants in this litigation supporting the position of the Internal Revenue Service.

The validity of the charitable gifts and, thus, the charitable deductions for Federal estate tax purposes depends entirely on State law. As a result, the executors seek a declaratory judgment under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §831, et seq., to resolve this issue. Section 6 of the said act provides as follows:

"Relief by declaratory judgment or decree may be granted in all civil cases . . . or (3) where in any such case the court is satisfied that a party asserts a legal relation, status, right or privilege in which he has a concrete interest and that either (i) there is a challenge or denial of such asserted relation, status, right or privilege by an adversary party who also has or asserts a concrete interest therein, or (ii) that there is an uncertainty with respect to the effect of such asserted relation, status, right or privilege upon the determination of any tax imposed or to be imposed by any taxing authority, including the United States, any state and any political subdivision thereof, and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding."

It is important to this estate, the residuary legatees and to the estate of Isabel Jamison Silvester that this tax question be resolved now. It should not have to await the death of the remaining income beneficiary. Failure to have the issue resolved now could result in proceedings by the Internal Revenue Service against the executors and trustees for collection of the tax deficiency of $68,536.04 with interest. All parties who would be affected by a decision are represented by counsel except the United States which has declined to intervene and participate. The Declaratory Judgments Act specifically provides the method for resolving this issue and thus the matter is properly before the court: Lifter Estate, 377 Pa. 227 (1954).

Because Mrs. O'Brien died in 1966, the validity of the remainder gifts to the charities is determined by the Wills Act of April 24, 1947, P. L. 89, sec. 7(1), 20 PS §180.7(1). The pertinent part of that section states:

"If each instrument shall give for substantially the same religious or charitable purpose . . . a share of the residuary estate . . . subject to identical prior estates and conditions, the later gift shall be valid to the extent to which it shall not exceed the prior gift."

In the instant case, both instruments left the sum of $25,000 to the First Presbyterian Church of Philadelphia and both instruments left the remainder to the Philadelphia Foundation.

We thus arrive at the issues. Were the remainder gifts to the First Presbyterian Church and the Philadelphia Foundation subject to identical prior estates and conditions and thus saved? Do they fail in their entirety? Is only one-half of the remainder to the Philadelphia Foundation saved and the other one-half of the remainder and the gift to the First Presbyterian Church not saved?

A careful analysis of the factual situation and its relation to the history of the legislation and the cases decided to date is appropriate at this juncture. The basic purpose of the 30-day requirement was and is to prevent a testator during his last illness from being importuned or otherwise influenced by hope of reward or fear of punishment in the hereafter to leave his estate in whole or in part to charity or to church. In order to avoid the complex problems of proving actual coercion or intimidation in such situations, the legislature established a clear and inflexible rule voiding gifts to charities in wills drawn within 30 days of death. Eventually, society came to realize that gifts to charity or church which were made within the last 30 days of a man's life were not always unduly influenced by charity or church and that the law was unfair to the testator, the charity and the church in many instances. Therefore, the legislature decided that the law should be modified and liberalized, and that gifts to charities and churches which were made within 30 days of death should be protected and validated under certain circumstances. They have effected this policy by making changes in the applicable statutes throughout the years.

Section 7(1) of the Wills Act of April 24, 1947, was intended to accomplish this result. The Committee on Decedents' Estates Laws of the Joint State Government Commission which drafted the Wills Act of April 24, 1947, 20 PS §180.7, pages 267, 268; 1 CCH Pa. Estates, Wills and Trusts, page 10112, stated:

"Subsection (1) 'takes care of the general situation where a testator has been charitably inclined and then changes his will in some respect within 30 days of death.' "

None of the cases decided under this section of the Wills Act is on all fours with the instant case. How-

ever, almost all of the cases contain the language that section 7(1) should be liberally construed in order to effectuate the object of the act which was to modify the prior harsh law and to promote justice: Baum Estate, 418 Pa. 404 (1965); McGuigen Estate, 388 Pa. 475 (1957).

In Denney Estate, 7 Fiduc. Rep. 610 (1957), testatrix had executed a will three days before death. The will contained an outright bequest of 49 percent of the residue to a college. A prior will had provided for an outright bequest of 32 percent of the residue to the same college; 10 percent to the same college subject to a life estate in "A" and 2 percent subject to a life estate in "B." Both life estates have been eliminated from the last will and the outright gift was increased by 17 percent. However, "A" had died before the last will was executed.

The court held that section 7(1) of the Wills Act saved 42 percent of the residue for the college. It reasoned that there was no change as to the outright bequest of 32 percent of the residue. The 10 percent was saved on the theory that had the prior will not been revoked, the college would have had a present right to the remainder because of the life tenant's death and the legacy would not have been subject to any condition or prior estate at the taking. The court further stated that the act does not require a testator to give a life estate to a dead man in order to save a charitable gift made within 30 days of his death. The gift of two percent of the residue was held to be invalid on the basis that the gift was changed from the remainder interest to an outright gift and, thus, not within the saving effect of the statute.

The same reasoning applies to the instant case in regard to one-half of the remainder. Testatrix in her will divided the remainder of her estate into two trusts.

In the first trust, she gave life estates to her sister and cousin and the remainder to the Philadelphia Foundation. In the codicil executed three days before her death, the same sister and cousin were given life estates in the entire residue and then the remainder to the Philadelphia Foundation subject to a payment of $25,000 to the First Presbyterian Church. Thus, the Philadelphia Foundation, under both the will and the codicil, had a remainder interest in one-half of the residue subject to exactly the same two life estates. This court has no difficulty in concluding that section 7(1) of the Wills Act of 1947 validates the gift of one-half of the residue to the Philadelphia Foundation.

The charities which would benefit under the will of Isabel Jamison Silvester argue that the remainder gifts are not "subject to identical prior estates and conditions" within the meaning of section 7(1) and are not saved by it because, in the will, one-half of the remainder was dependent upon two prior life estates and the other half on five other life estates; whereas, in the codicil, the remainder was subject to only the two life estates of the first trust. This position requires a literal reading of the statute that is not supported by any cases and is directly contrary to the language contained in many cases, that this statute should be liberally interpreted. As a result, I find no merit in this argument.

We next come to the question of what effect does the removal of the five income beneficiaries and the substitution in their stead of the sister and cousin as income beneficiaries have on the bequest of the $25,000 to the First Presbyterian Church and the other one-half of the residue. Are these gifts saved by section 7(1) or do they fail, resulting in an intestacy?

In McGuigen Estate, 388 Pa. 475 (1957), the testatrix in a prior will gave the residue of her estate

amounting to $140,000 to a trustee to hold in perpetual trust and pay the income therefrom to a charity. In her last will, executed five days before her death, testatrix gave the residue of her estate amounting at that time to $94,000 outright to the same charity. The court concluded that this gift was saved by section 7(1) of the Wills Act. It reasoned that the share given the charity in each will was substantially the same, i.e., the entire residuary estate in fee or the income therefrom forever, each was payable immediately, and neither of them was subject to prior estates or conditions. The court also went on to say at page 481:

"Irrespective of any principle or canon of construction, it is clear that §7(1) of the Wills Act of 1947 should be liberally construed in order to effectuate the object of the Act which was to modify the prior harsh law and to promote justice:"

In Benner Estate, 6 Fiduc. Rep. 150 (1956), the probated will contained an outright bequest of 10 percent of residue while the prior will contained a gift of one-eighth of residue preceded by two life estates on the whole of residue. This gift failed. The court reasoned that the gift in the prior will was a remainder gift, not payable immediately but following two life estates whereas the gift of a share of residue was an immediate and outright gift.

In Witmer Estate, 2 Fiduc. Rep. 113 (1952), a prior will left pecuniary legacies of $200 to each of three charities. The later probated will left the entire residuary estate to the same three charities. The court found the gift in the later will was valid to the extent that it did not exceed the gift in the earlier will, stating at page 115:

"We have nevertheless concluded that our factual situation comes within the intention of the drafters of the statute. It is our opinion that the statute should

be interpreted liberally to preserve charitable gifts so far as possible."

This movement by the legislature to liberalize this statute did not end with the changes in the Wills Act of 1947. In 1970, this specific section was again amended. See 20 PS §180.7, as amended April 22, 1970. This amendment provided that a charitable gift in this category would be invalid only to the extent that someone who would benefit from its invalidity objected. It required this objection to be in writing and to be filed within six months of probate of the will. It further provided that only that person who so objected would get his proportionate share and the rest of the charitable gift would be valid. Thus, the setting aside of such a bequest was no longer a matter of course. The burden was shifted to those who had an objection to come forward and object. Failure to do so would result in the validating of the charitable bequests. The same amendment also changed the law further when it specifically took away from the Commonwealth the right to raise any objection. These enactments by the legislature must lead one to a conclusion that a liberal interpretation of the statute is proper and in step with current public policy.

Certainly, it is evident that this testatrix had been charitably inclined toward the First Presbyterian Church and the Philadelphia Foundation. The changes in her codicil dealt with individuals, not with charities. Suppose the five life tenants of the second trust had fallen into disfavor with testatrix and she wanted to substitute some other life tenants in their place. Would she then have had to retain persons who are no longer objects of her bounty in her will in order to validate the gifts to the charities? Here, the gifts were not changed. The gift to the church and to the foundation in the codicil was not an immediate and outright gift. It was a remainder gift subject to life estates as it had

been in the prior will. Both the will and the codicil designated the same charities in the same way, i.e., the Philadelphia Foundation was to get the remainder of the estate after designated life estates had terminated subject to the payment of $25,000 to the First Presbyterian Church. Testatrix did not superimpose such different provisions in respect to her charitable bequests as would prevent the application of the statute. See Pearl Estate, 16 D. & C. 2d 227, 229 (1959).

These facts, together with the enunciated direction contained in the many cases that this statute should be liberally construed, leads to the conclusion that the gift to the First Presbyterian Church and the gift of the remaining one-half of the residue to the Philadelphia Foundation are validated by section 7(1) of the Wills Act of 1947, and I so find as a matter of law.

We next come to the question as to what extent are these gifts valid. The statute provides that they are valid only to the extent that they do not exceed the prior gifts. In the will, the gift of one-half of the residue to the Philadelphia Foundation was subject to life estates in Isabel Jamison Silvester and George C. Arnold. In the codicil, this one-half of the residue was subject to the same two life estates. As a result, the gift has not changed. In the will, the gifts of one-half of the residue to the Philadelphia Foundation and of the $25,000 to the First Presbyterian Church were subject to five life estates and in the codicil to two different life estates.

The life beneficiaries in the will were Blanche Gibson born January 7, 1886, Molly Barney born March 8, 1888, Sarah Jane Hirst born March 13, 1880, Edna Moore born February 1, 1893, and Christine Smock born January 17, 1895. The codicil substituted Isabel Jamison Silvester born February 1, 1900, and George C. Arnold born April 26, 1907, as the life beneficiaries. An examination of the ages of the life benefi-

388

ciaries under the will and under the codicil leads to the conclusion that it is more probable that it would take longer for the charities to get the funds under the codicil than under the will. Also, it was agreed by all parties at oral argument that the calculations attached to the petition for declaratory judgment were correct and that the inclusion of an additional $25,000 of specific bequests in the codicil and the taxes thereon resulted in the dollar value of the remainder interest of the Philadelphia Foundation under the codicil being less than it would have been under the will. As a result, I find that the value of the remainder interest of the Philadelphia Foundation and the First Presbyterian Church are less under the codicil than under the will.

Accordingly, I enter the following

DECREE

And now, March 30, 1973, upon consideration of the petition, answers with new matter, and replies filed in the above-captioned matter, and after hearing argument and upon consideration of the briefs submitted, it is ordered and decreed that the gifts in remainder to charities under the codicil of Elizabeth Jamison O'Brien are valid.