329 A.2d 503
**In the Matter of the ESTATE of Leona E. CAVILL, Deceased.**

**Appeal of Ernestine MITCHELL et al.**

Supreme Court of Pennsylvania.
Argued May 20, 1974.
Decided Dec. 5, 1974.

Donald W. Grieshober, Blackmore & Grieshober, Erie, for appellant.

John W. English, Wendell R. Good, Erie, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On October 31, 1957, twenty-four days prior to her death, Leona E. Cavill executed her last will and tes-

tament. In an audit statement, filed pursuant to the first and final account, decedent's executrix requested a hearing on the applicability of section 7(1) of the Wills Act of 1947 [1] to the final dispositive paragraph of the will. That paragraph directs that the residue of decedent's estate be divided among five named charitable organizations.[2] A supplemental account showing $100,750.97 in the estate was filed in 1972, and the account was called for audit.[3]

The orphans' court held that the residuary estate should be distributed to the five charitable organizations named in the will. Cavill Estate, 56 Erie County Legal J. 44 (Pa.O.C.1973). Decedent's intestate heirs have appealed.[4] We affirm.

1. Act of April 24, 1947, P.L. 89, § 7(1). The relevant portion of § 7(1) states:
   "Any bequest or devise for religious or charitable purposes included in a will or codicil executed within thirty days of the death of the testator shall be invalid unless all who would benefit by its invalidity agree that it shall be valid."
   This section was amended by the Probate, Estates and Fiduciaries Code, 20 Pa. S. § 2507(1) (Special Pamphlet 1974) (effective July 1, 1972). However, because testatrix died while the 1947 Act was in effect, the orphans' court properly applied that Act. See Cavill Estate, 56 Erie County Legal J. 44, 45 n. 1 (Pa.O.C. 1973) (Dwyer, P. J.). Since section 7(1) and section 2507(1) are identical in effect, our analysis of section 7(1) is equally applicable to section 2507(1).

2. The residuary clause reads:
   "TENTH: All the rest, residue and remainder of my estate, whether real, personal or mixed, of whatsoever kind or nature and wheresoever situate at the time of my decease, I give, devise and bequeath unto The American Heart Association; The American Cancer Society Incorporated; The American Foundation for the Blind; Boys Town of Boys Town, Nebraska; and Zem Zem Hospital for Crippled Children, of Erie, Pennsylvania, to be equally divided among them, share and share alike."

3. Notice of the hearing was given to the five charities, the decedent's intestate heirs, and the Attorney General of the Commonwealth.
   The charities argue that the delay in calling the estate for audit estops the heirs from contesting the residuary bequests. The record does not indicate, however, that this delay can be attributed to the heirs. Therefore it cannot operate to estop them.

4. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, Art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1974).

█ Although statutory provisions substantially identical to section 7(1) have been in effect in Pennsylvania since 1855,[5] this Court has never passed on the constitutionality of this so-called "Mortmain statute."[6] A three-pronged constitutional attack is now before us. En route to its holding, the orphans' court concluded that by invalidating all charitable or religious gifts included in a will executed within thirty days of death, section 7(1) violates the due process, privileges and immunities, and equal protection clauses of the Fourteenth Amendment. Id. at 46–47. We need consider only one of these grounds; we conclude that section 7(1) denies the charitable beneficiaries equal protection of the laws.[7]

The raison d'etre of Mortmain statutes has been variously described.

"The motive behind these acts is not hostility to charity, but rather a desire to prevent imposition upon the donor and to protect his family against unwise generosity. The statutes are intended to require gifts to charity to be made with proper deliberation and at a time when the donor is in at least reasonably competent physical condition. They seek to hold for the near relatives of the donor a fair share of his estate, as against the claims of charity."

5. See Act of April 26, 1855, P.L. 328, § 11; Act of June 7, 1911, P.L. 702, § 1; Act of June 7, 1917, P.L. 403, § 6; Act of April 24, 1947, P.L. 89, § 7; 20 Pa. S. § 2507(1) (Supp.1974).

6. In 1880 the Court did allude in dictum to the constitutionality of the then-existing Mortmain statute.
   "While the propriety of legislation which thus limits the right of giving for religious or charitable purposes may sometimes have been questioned, it has never been doubted that the act is constitutional, and the only question presented for our consideration is whether the residuary bequest is for either a religious or charitable use, and therefore falls within the prohibition of the statute."
   Rhymer's Appeal, 93 Pa. 142, 146 (1880).

7. U.S.Const. Amend. XIV, § 1. Our holding is likewise mandated by the prohibition of special laws in the Pennsylvania Constitution, Pa.Const. art. III, § 32, P.S.

3 G. Bogert, The Law of Trusts and Trustees § 326, at 683 (2d ed. 1964). See also 4 A. Scott, The Law of Trusts § 362.4, at 2821 (3d ed. 1967).

"The basic purpose of the 30 day requirement was and is to prevent a testator during his last illness from being importuned or otherwise influenced, by hope of reward or fear of punishment in the hereafter, to leave his estate in whole or in part to charity or to church." *McGuigen Estate,* 388 Pa. 475, 478, 131 A.2d 124, 126 (1957) (Bell, J.) (dictum) ; see *Paxson's Estate,* 221 Pa. 98, 111, 70 A. 280, 285 (1908).

█ The basic principles which govern this case are well known.

" '[T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. *Barbier v. Connolly,* 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923 (1885) ; *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911) ; *Railway Express Agency v. New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949) ; *Mc-Donald v. Board of Election Commissioners,* 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).' "

*Eisenstadt v. Baird,* 405 U.S. 438, 446–447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 (1972), quoting *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971).

Section 7(1) divides testators into two classes. One class is composed of those testators whose wills provide for charitable gifts and who die within 30 days of executing their wills. The other class is composed of those testators who either make no charitable gifts or survive the execution of their wills by at least 30 days. The statute renders invalid any charitable gifts made by a testator in the first class if any person "who would benefit by its invalidity" objects.[8] In all other cases, one who wishes to invalidate a testamentary gift must prove lack of testamentary capacity or undue influence.

Clearly, the statutory classification bears only the most tenuous relation to the legislative purpose. The statute strikes down the charitable gifts of one in the best of health at the time of the execution of his will and regardless of age if he chances to die in an accident 29 days later. On the other hand, it leaves untouched the charitable bequests of another, aged and suffering from a terminal disease, who survives the execution of his will by 31 days. Such a combination of results can only be characterized as arbitrary.

Furthermore, while the legislative purpose is to protect the decedent's family, the statute nevertheless seeks to nullify bequests to charity even where, as here, the testator leaves no immediate family.[9] In these circumstances, the statute would operate to "protect" only distant relatives, with whom the testator may have had little or no contact during life, against the carefully selected and clearly identified objects of the testator's bounty. This protection of a nonexistent "family" defeats the testator's expressed intent without any relation to the purpose which is sought to be promoted, further demonstrating the irrationality of the statutory classification.

8. Act of April 24, 1947, P.L. 89, § 7(1). See note 1, supra.

9. Leona Cavill left no surviving issue, spouse, ancestor, or sibling. All of the next of kin were children of her deceased brothers and sister.

Because the statute sweeps within its prohibition many testamentary gifts which present no threat of the evils which the statute purports to minimize, it is substantially over-inclusive. Since the statute also leaves unaffected many gifts which do present such a threat, it is also substantially under-inclusive. We are thus compelled to conclude that it lacks "a fair and substantial relation" to the legislative object. Therefore, the Equal Protection Clause forbids us to give it any effect. *Eisenstadt v. Baird,* 405 U.S. 438, 447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 (1972); *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971); *F. S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

The decree of the orphans' court is affirmed. Each party pay own costs.

POMEROY, J., filed a dissenting opinion in which EAGEN, J., joins.

POMEROY, Justice (dissenting).

I

Equal Protection

The Court today strikes down as violative both of the United States Constitution and the Pennsylvania Constitution § 7(1) of the Wills Act of 1947,[1] a provision which for well over a century has been part of the fabric of our law governing wills and decedents' estates.[2]

1. Act of April 24, 1947, P.L. 89, § 7(1), 20 P.S. § 180.7(1). The majority notes that its analysis extends to § 7(1)'s successor provision, § 2507(1) of the Probate, Estates, and Fiduciaries Code. 20 Pa. S. § 2507(1), effective July 1, 1972. Because the language of the two provisions is not identical, however, there would appear no necessity for adjudicating the constitutionality of the latter provision until the issue is squarely before this Court.

2. Substantially similar provisions are included in the laws governing the testamentary disposition of property of various other states of The Union. Restatement (Second) Law of Trusts, § 362(c) and Appendix thereto, 1959; Am.Jur.2nd, Charities, § 23.

In so doing, while purporting to apply well-established constitutional principles governing equal protection of the laws, the majority comes perilously close to assuming the posture of a super-legislature which judges the wisdom rather than the validity of legislation. *See San Antonio School District v. Rodriguez*, 411 U.S. 1, 40, 93 S. Ct. 1278, 36, L.Ed.2d 16, 47 (1973); *Shapiro v. Thompson*, 394 U.S. 618, 661, 89 S.Ct. 1322, 22 L.Ed.2d 600, 631 (1969) (dissenting opinion of Mr. Justice Harlan); *Goesaert v. Cleary*, 335 U.S. 464, 466, 69 S.Ct. 198, 93 L.Ed. 163, 166 (1948). I am compelled to dissent.

The Supreme Court of the United States has consistently held that when considering an equal protection challenge to a state legislative classification scheme which does not involve either a "suspect" classification or a "fundamantal" right, the proper test to apply is whether the classification bears some rational relationship to a permissible state objective. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *McDonald v. Board of Election*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). *See also Eisenstadt v. Baird*, 405 U.S. 438, 447, 92 S.Ct. 1029; 31 L.Ed.2d 349, 358–359 (1972).[3] The rational basis test is particularly appropriate when the economic or social legislation in issue pertains to matters the regulation of which rests peculiarly within the province of state or local government. *San Antonio School Dist. v. Rodriguez, supra*, 411 U.S. at 40, 93 S.Ct. 1278, 36 L.Ed.2d at 47; *Labine v. Vincent*, 401 U.S. 532, 538, 91 S.Ct. 1017, 28 L.Ed.2d 288, 294 (1971), reh. den. 402 U.S. 990, 91 S.Ct. 1672, 29 L.Ed.2d 156 (1971).

**3.** When a statutory scheme affects a suspect classification or a fundamental right, the state carries the burden of demonstrating that it is necessary to promote a compelling state interest. *Shapiro v. Thompson*, supra, 394 U.S. at 634, 89 S.Ct. 1322, 22 L.Ed.2d at 615.

That the state has a significant interest in, as well as the paramount authority to regulate, the devolution of an individual's property at death cannot be questioned. *Harris v. Zions Bank Co.*, 317 U.S. 447, 63 S.Ct. 354, 87 L.Ed. 390 (1943); *Scott Estate*, 418 Pa. 332, 211 A.2d 429 (1965); *Maginn's Estate*, 278 Pa. 89, 122 A. 264 (1923). The state's power in this area, which is virtually plenary, permits it constitutionally to determine who may give and who may receive property at death, whether by will or intestacy, under what circumstances, and by what methods. *Labine v. Vincent, supra,* 401 U.S. at 537, 91 S.Ct. 1017, 28 L.Ed.2d at 293; *Lyeth v. Hoey,* 305 U.S. 188, 193, 59 S.Ct. 155, 83 L.Ed. 119, 123 (1938); *United States v. Burnison,* 339 U.S. 87, 70 S.Ct. 503, 94 L.Ed. 675 (1949); *Tack's Estate,* 325 Pa. 545, 191 A. 155 (1937).[4] As Justice (later Chief Justice) Stern stated in the case last cited, "[t]he right to transmit or to receive property by will or through intestacy is not a natural right but a creature of statutory grant." 325 Pa. at 548, 191 A. at 156. *See also In re Noyes Estate,* 40 Mont. 178, 105 P. 1013 (1909); *In re Walker's Estate,* 110 Cal. 387, 42 P. 815 (1895).[5] Thus, as the

4. In *United States v. Burnison, supra,* the Supreme Court of the United States held that a California statute which prevented the state's domiciliaries from making testamentary bequests to the United States while permitting such gifts to be made to the state did not constitute the kind of invidious discrimination which the Fourteenth Amendment proscribes. The Court noted that a long line of cases has "consistently held that part of the residue of sovereignty retained by the states, a residue insured by the Tenth Amendment, is the power to determine the manner of testamentary transfer of a domiciliary's property and the power to determine who may be made beneficiaries." 339 U.S. at 91–92, 70 S. Ct. at 506, 94 L.Ed. at 681.

5. When presented with an attack identical to the one made in the instant case, the Supreme Court of Florida stressed that because there is neither an explicit nor implicit reference to the subject of decedents' estates in either the federal or state constitutions, "the right of testamentary disposition of property . . . is a creature of the law derived solely from statute without constitutional limitation. Accordingly, the right is at all times subject to regulation and control by the legislative authority which creates

majority implicitly recognizes, it is *at most* the rational basis test by which the constitutional validity of § 7(1) is to be judged.

Whether § 7(1) creates a classification scheme at all is for me a dubious question. The Wills Act of 1947 together with its companion statute, the Intestate Act of 1947, Act of April 24, 1947, P.L. 80, § 1 et seq., 20 P.S. § 1.1 et seq., constitutes a comprehensive plan designed to insure the orderly transmission of property of persons who die resident in this Commonwealth. The Wills Act prescribes numerous conditions which must be met in order for a testamentary disposition to be a valid will, and places various restrictions upon an individual's power to dispose of his property in accordance with his wishes. Thus, § 2 requires that for a will to be valid it generally must be in writing, must be signed by the testator, and must be signed by the testator "at the end thereof"; and § 3 automatically voids any nuncupative will which attempts to dispose of an estate of personalty greater than $500. Moreover, § 7, generally, provides that upon the occurrence subsequent to the execution of a will of certain specified events, i. e. divorce, marriage, birth, adoption, slaying, and death within thirty (30) days of the execution of a bequest to a charitable institution, a modification of the testator's will shall result. Because this section is deemed by the legislature to reflect the intentions of most persons who have experienced such change in circumstances, the modification occurs by operation of law and in most instances without regard to the actual intentions of the individual testator. See comment to clause 2 of § 7 at 20 P.S. § 180.7. Without belaboring the point it is simply that any of the preconditions of valid execution of a will or the several provisions for modification of a will by circumstances can be manipulated into "classifications." The same can be said of the

it . . ." *Taylor v. Payne,* 154 Fla. 359, 362–363, 17 So.2d 615, 617 (1944), app. dism. 323 U.S. 666, 65 S.Ct. 49, 89 L.Ed. 541, reh. den. 323 U.S. 813, 65 S.Ct. 113, 89 L.Ed. 647 (1944).

carefully structured Intestate Law of Pennsylvania, 20 P.S. § 1.1 et seq., *supra,* which controls the transfer at death of the very substantial property interests of those persons who die without leaving a will. Whether, realistically viewed, the creation of classifications is the effect of such statutory provisions is another matter entirely. It is puzzling that the Court in its opinion has failed even to mention the recent decision of the Supreme Court of the United States in *Labine v. Vincent,* 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), which in my view is virtually controlling in this case. There, that portion of the Louisiana intestate law which prohibits illegitimate children from inheriting equally with legitimate children from their natural father was challenged as constituting a denial to illegitimates of equal protection of the laws. The Court, speaking through Mr. Justice Black, emphasized the extensive power which a state possesses to establish rules of inheritance and the legitimate interest of the state in so doing. In finding the petitioner's claim without merit, the Court expressed its scepticism as to whether such statutory schemes do in fact create classifications. "Even if we were to apply the 'rational basis' test to the Louisiana intestate succession statute, that statute clearly has a rational basis, in view of Louisiana's interest in promoting family life and of directing the disposition of property left within the State." 401 U.S. at 536, 91 S.Ct. at 1019, 28 L.Ed.2d at 292.[6]

Assuming, however, that § 7(1) does create a classification scheme, there remains the task of testing its valid-

**6.** Justice Black went on to state for the majority: "[t]hese rules for intestate succession may or may not reflect the intent of particular parents. Many will think that it is unfortunate that the rules are so rigid. Others will think differently. But the choices reflected by the intestate succession statute are choices which it is within the power of the State to make. The Federal Constitution does not give this Court the power to overturn the State's choice under the guise of constitutional interpretation because the Justices of this Court believe that they can provide better rules." 401 U.S. at 537, 91 S.Ct. at 1020, 28 L.Ed.2d at 293.

ity against the appropriate standard. The majority has adverted to the two basic legislative purposes underlying the provision: to prevent the possibility that a testator, faced with impending death and in fear of eternal damnation, may impulsively bequeath an inordinate proportion of his property to charitable institutions, *McGuigen Estate,* 388 Pa. 475, 131 A.2d 124 (1957) ; and to insure that the next-of-kin and natural heirs of a testator are protected from a less than deliberate transfer of the estate. Baum Estate, 418 Pa. 404, 407 n. 2, 211 A.2d 521, 522 n. 2 (1965). My brother Roberts in speaking for the majority does not deny that these are entirely permissible concerns of the state but concludes, rather, that the statutory classification does not bear a rational relationship to those purposes. This is so, he reasons, because the statute is both overinclusive and underinclusive. I find this rationale wholly untenable; under the guise of the traditional rational basis test, the Court has, in fact, applied the "strict scrutiny" standard demanded only in those instances where a suspect classification or a fundamental right is at stake.[7] In those cases where the rational basis test is appropriate, the concepts of overbreadth and underbreadth are irrelevant and there exists no requirement that the state demonstrate a statute drawn with mathematical precision. *Dandridge v. William, supra,* 397 U.S. at 484, 90 S.Ct. 1153, 25 L.Ed.2d at 501; *cf. Harper v. Virginia Board of Elections,* 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169, 174 (1966). While it might be desirable that all regulatory legislation be so perfectly drawn as to foreclose the possibility of

---

7. In *Rodriguez, supra,* the Supreme Court of the United States noted that, as delineated in prior decisions of that Court, the strict scrutiny test converts the usual presumption of constitutionality which state legislation generally enjoys to one of invalidity; places the "heavy burden of justification" upon the state rather than the challenger; and requires the state to demonstrate a "narrowly tailored" plan for coping with its legislative objectives, 411 U.S. at 16, 93 S.Ct. 1278, 36 L.Ed.2d at 33.

reaching an activity or situation not intended to come within its scope, this is, of course, an impossibility. It is sufficient, therefore, that the classification scheme is *reasonably* related to the legislative objective. *Morey v. Doud*, 354 U.S. 457, 465, 77 S.Ct. 1344, 1 L.Ed.2d 1485, 1491 (1957).[8] "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." Railway Express Agency v. New York, 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533, 539 (1949). It is true, of course, that the thirty day rule of § 7(1) could operate upon occasion to permit to stand bequests which were irrationally made[9] and to void others which were the product of calm reflection. This fact alone, however, does not render the rule unconstitutional. As was most recently stated by this Court through Mr. Justice Manderino, "[t]he use of mathematical limitations as the basis for separate classifications in the law is constitutional so long as the number selected bears a reasonable relationship to a legitimate legislative objective." *Goodman v. Kennedy*, 459 Pa. 313, 329 A.2d 224 (1974) (filed October 25, 1974). Certainly the legislature's determination that the thirty day rule would operate generally to protect those testators who execute their wills in their last illnesses cannot be considered irrational. To require any further degree of precision would result in legislative paralysis. As was noted in *Goodman, supra,* this Court has upheld numerical classification where to do otherwise would hinder enforcement and application of the statute. See Pa., 329 A.2d at 224 and cases there cited.

8. ". . . Such discrepancies are the inevitable concomitant of the line drawing that is essential to law making. So long as the classification is rationally related to a permissible legislative end, therefore, . . . there is no denial of equal protection." *Kramer v. Union Free School District,* 395 U.S. 621, 637, 89 S.Ct. 1886, 1895, 23 L.Ed.2d 583, 595–596 (dissenting opinion of Mr. Justice Stewart).

9. The will of a testator who survives the thirty day period of course continues subject to challenge on the grounds of undue influence or lack of testamentary capacity.

In sum, I must conclude that § 7(1) is entirely consistent with the demands of equal protection in both the federal and Pennsylvania Constitutions. In an age when the hope of salvation may be less vivid and the fear of damnation less acute than formerly it was, one may disagree with the wisdom or necessity of the provision before us today; but wisdom—whether that of this Court or the legislature—is not determinative of legislative power. In my opinion, § 7(1) is a proper exercise of that power.

## II

### Due Process

In light of its disposition, the majority has not deemed it necessary to consider the alternative ground of decision below, viz., that § 7(1) of the Wills Act denies the appellees due process of the law as well as equal protection of the laws. Because I differ with the Court's conclusion as to equal protection, it is necessary to face the due process argument. Here again, I do not agree that any constitutional rights of the charities are involved. The trial court held that § 7(1) denies·the appellee-charities due process of law in that it creates an irrebuttable presumption of either undue influence or the testator's incompetence as to the charitable bequest. This conclusion, as I see it, is both unfounded and unnecessary. In the exercise of its power to regulate the devolution of decedents' estates, the legislature through § 7(1) has created not a presumption but an express proscription against testamentary gifts to charities and religion within the thirty day period.[10] This distinction between a conclusive presumption and a

10. It is, of course, a fundamental rule of statutory construction that the legislature is presumed to have intended its action to conform to the prescriptions of the Constitutions of the United States and of this Commonwealth. Statutory Construction Act of 1972, 1 Pa. S. § 1922(3). Thus, when there are two reasonable interpretations of a statute, one which would invalidate it and the other which would validate it, the latter must be chosen.

flat prohibition is not one without a difference when the constitutional implications of a state's legislative action are at stake.[11]

If it be assumed, for the sake of argument, that § 7(1) creates a presumption, it can hardly be deemed an irrebuttable one. The section provides two methods by which the charitable beneficiary may "rebut" the "presumption." The first is by obtaining the consent of all other interested parties; the second is by proving the existence of a prior will executed before the thirty day period which had been revoked by the second will, and which contains identical gifts for substantially the same charitable purposes. As the Court stated in *Baum Estate, supra,* the purpose of these two provisions was

". . . to remove from the operation of our thirty day prohibition those cases which did not, in reason, fall within the purpose of the thirty day rule. *See McGuigen Estate,* 388 Pa. 475, 131 A.2d 124 (1957); Comments of the Joint State Government Commission, Comment to § 7(1), 20 P.S. Section 180.7, pp. 267, 268." *Baum Estate, supra,* 418 Pa. at 411, 211 A.2d at 524.

If, then, the so-called presumption is not in fact iron-clad under all circumstances, there has been no absolute denial of the charitable beneficiaries' rights to be heard. If, on the other hand, and as I believe to be the case, § 7(1) expresses a proscription, then there has been no denial of these rights because the appellees had none.

Before the guarantees of procedural due process attach, a complaining party must demonstrate that he possesses some recognized interest of life, liberty, or property. *Board of Regents v. Roth,* 408 U.S. 564, 569–570, 92 S.Ct. 2740, 33 L.Ed.2d 548, 556–557 (1972).

11. The power of a legislature to proscribe certain conduct does not imply the power to permit irrebuttable presumptions to flow from that conduct. *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).

"The fourteenth amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. [citations omitted] To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth, supra* at 576–577, 560–561, 92 S.Ct. at 2708–2709. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

In the instant case it is impossible to see what property interest, what right of entitlement these charities possess. The right to receive property by will is not a natural right but one conferred, if at all, by statute. *Tack's Estate, supra.* The legislature has determined that charitable and religious institutions shall generally have no right to inherit property unless the testator survives by thirty days the making of his will in which is contained a charitable or religious bequest. Failure to grant a right which is broader is not a denial of due process of law. Recent cases decided by the Supreme Court of the United States on the "irrebuttable presumption" theory are immediately distinguishable on this ground. In each, the petitioner possessed a clear right of liberty or property which had been summarily extinguished by the state. *See Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551, 558 (1972) (the essential right to conceive and raise one's children) ; *Cleveland Board of Education v. La Fleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52, 60 (1974) (the fundamental right of personal choice in matters of marriage and family life) ; *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90, 94 (1971) (important interest in maintaining possession of driver's license issued by state); *Vlandis v. Kline,* 412 U.S. 441, 452, 93 S.Ct. 2230, 37 L.Ed.2d 63, 72 (1973)

(property interest in one's own money).[12]   Whatever the meaning of "irrebuttable presumption," it is not, without more, a constitutionally significant phrase.   Our attention must focus first on the existence or non-existence of a constitutionally protected interest.   Because the appellees possess no such interest, their due process claim must fail.

I would reverse the decree of the lower court and direct distribution in accordance with the provisions of the Wills Act.

EAGEN, J., joins in this dissent.

**12.**   It is significant to note that Mr. Chief Justice Burger dissented from the decision in *Vlandis* on the ground that the majority had failed adequately to demonstrate that the petitioner possessed any genuine interest of liberty or property which merited constitutional protection.   The Chief Justice went on to state:
> "There will be, I fear, some ground for a belief that the Court now engrafts the 'close judicial scrutiny' test onto the Due Process Clause whenever we deal with something like 'permanent irrebuttable presumptions.'   But literally thousands of state statutes create classifications permanent in duration, which are less than perfect  .   .  .. For example, a State provides that a person may not be licensed to practice medicine or law unless he or she is a graduate of an accredited professional graduate school; a perfectly capable practitioner may as a consequence be barred 'permanently and irrebuttably' from pursuing his calling, without ever having an opportunity to prove his personal skills."   *Vlandis v. Kline, supra,* dissenting opinion of Burger, C. J., at 462, 93 S.Ct. at 2241, 37 L.Ed.2d at 77.