**Fridenberg Trust**

Before Pawelec, Adm. J., Gutowicz, Silverstein, Jamison, and Klein, JJ.

*Richard K. Wagner* and *J. Harry Wagner, Jr.,* for accountant.

*Albert L. Doering, III,* for estates of intestate heirs.

*Edwin H. Rouh, Jr.* and *Cuthbert H. Latta,* for The University of Pennsylvania.

*Robert A. Wachter,* for Jewish Family Services of Phila.

*Lawrence Barth,* for Commonwealth as parens patriae.

*Robert J. Dixon,* for Commonwealth.

*Israel Packel* and *William T. Tsiouris,* contra exceptions.

ADJUDICATION BY PAWELEC, ADM. J., FEB. 22, 1980:

This trust arises under the will of Mone S. Fridenberg, who died February 19, 1931, leaving a will dated February 4,

1931 and codicils thereto dated February 5 and 9, 1931, whereby he left the remainder of his estate to his trustees, in trust, to pay $1,000 a year each to Fanet Hein Chutjian, Florence Oppenheim Hein and Benjamin Gerson Oppenheim, and to pay the balance of net income to testator's wife, Mabel S. Fridenberg, and his sister, Anna E. Fridenberg, in equal shares, for life, or all to the survivor thereof. Upon the death of the survivor of his wife and sister, testator directed that the sum of $100,000 from the principal of this trust be paid to the trustees of the Hospital of the University of Pennsylvania and directed that the trustees of the said hospital erect a memorial to testator's parents, Samuel M. and Esther Fridenberg, in an appropriate place in the said hospital. Testator directed that the income from the balance of principal of the trust be paid to the United Hebrew Charities of the City of Philadelphia until such time as the said organization shall decide to erect a hospital, home or charitable object for the purpose of dispensing help or charity for the sick, needy or afflicted, as a memorial to testator's said parents. At that time, the balance of principal is to be paid to the said charity as a perpetual endowment fund for the keep, support and maintenance of the said memorial.

A copy of the will and codicils, certified by counsel for the accountants to be true and correct, is annexed hereto.

This accounting is of a fund awarded to the accountants by adjudication of Sinkler, P. J. dated December 13, 1949.

This account is filed by virtue of the death of the last annuitant, Fanet Hein Chutjian, on October 27, 1977. The other annuitants have also died, Benjamin Gerson Oppenheim on February 19, 1931, and Florence Oppenheim Hein on October 7, 1949. Anna E. Fridenberg, sister of testator and life tenant, died on March 26, 1940. Mabel S. Fridenberg, wife of testator, died on August 17, 1943.

Testator died within thirty days of the date of the execution of his will. Therefore, under the Mortmain Statute (§7 (1) of the Wills Act of 1947), which was the applicable law, the charitable bequests failed. Since there was no provision for a gift over, upon termination of the trust, the fund became payable to those entitled to the remainder of his estate under the intestate laws. Testator's wife and sister were the

intestate heirs. The estate of Mabel S. Fridenberg, wife of testator, was assigned to Florence Oppenheim, the residuary legatee of that estate. Fanet Hein Chutjian, annuitant, was duly qualified as the executrix of the estate of Florence Oppenheim Hein and was the residuary legatee of that estate.

At the audit of the executor's account in 1932, the auditing judge observed that the charitable gifts were made within 30 days of death and were, therefore, void. However, he expressly refrained from ruling on the ultimate devolution of the corpus of the residuary trust.

Accounts of the trust estate were filed upon the death of the testator's wife and sister in 1943 and upon the death of one of the annuitants in 1949.

In 1943, both charities were given notice of the audit of the account. An entry of appearance was filed by counsel for the Jewish Hospital Association. In the statement of proposed distribution, it was noted that the charitable bequests were made within thirty days of the date of death of the testator. In his adjudication dated December 10, 1943, President Judge Van Dusen held that the charitable bequests failed. He then awarded the principal of the trust to the two intestate heirs of the testator with the exception of $100,000 which he stated "the two annuitants had agreed . . . should be retained to secure the payment of their annuities."

In 1949, the auditing judge awarded one-half of the remaining principal of the trust to the accountant to secure payments to the one remaining annuitant and awarded the balance of principal to the intestate heirs. No mention of the charitable bequests was made in that adjudication.

It appears from the record that the exact issue presently before the court was previously adjudicated by the court in the 1943 adjudication. Both of the charities who have raised the claim at this time were given notice of the audit of the account, the issue and the proposed distribution in 1943. The Jewish Hospital Association, predecessor to the Jewish Family Service, was represented at the 1943 audit. Therefore, the court holds that the present claims are barred by the doctrine of res judicata.

The charities assert that *Cavill Est.*, 459 Pa. 411, which declared the Mortmain statute unconstitutional, must be retro-

actively applied and that, therefore, the charitable bequests in this trust are valid: *Barnholser Trust*, 29 FIDUC. REP. 423, 2 P.C.R. 383; *Heilig Trust*, 29 FIDUC. REP. 265.

However, we need not reach that issue here. The question before the court is whether the rights of the two charities had been determined at a prior audit so that the claims are now barred by the doctrine of res judicata.

In the 1943 adjudication, it is clear that the auditing judge awarded the principal of the trust to the intestate heirs subject to a fund being retained to secure the annuities due under the will. Therefore, the court determined at that time that the interests of the intestate heirs to the remainder of the trust vested at the death of the survivor of the life tenants. The fund set aside to secure the annuities was not a separate fund of principal, the interest of which was not determined. Rather, it was a part of the principal awarded to the intestate heirs, against which the annuitants had an equitable charge: *Flinn Est.*, 383 Pa. 79.

The doctrine of res judicata protects vested interests in principal from a later attack based on changes in the law following the audit in which the vested interests were recognized: *Clark Est.*, 75 D. & C. 2d 511.

While the doctrine does not extend the law applied at an earlier distribution to a subsequent distribution when the second concerns a fund distinct from the first fund, a *prior adjudication is conclusive with respect to all rights in the fund distributed: Arrott Est.*, 421 Pa. 275; *Kellerman Est.*, 242 Pa. 3.

In the instant case, all rights in the corpus of the trust were decided in the 1943 adjudication. The entire corpus was awarded at that time subject only to the equitable charge of the annuities. The fund held to secure the annuities was not a separate fund awaiting determination. Therefore, the 1943 adjudication is conclusive as to the rights in the principal of this trust: *Estate of Bell*, 343 A. 2d 679.

The claimants argue that this case is governed by *Estate of DeRoy*, 481 Pa. 403. In *DeRoy*, the court stated that the first adjudication only determined the rights to income in the trust and had not determined rights as to principal. Therefore, that case is not controlling.

It is stated that notice of the audit has been given to all parties in interest including the Attorney General as parens patriae in charitable trusts. \*\*\*

---

OPINION FOR COURT EN BANC BY KLEIN, J., DEC. 16, 1980:

We are in complete agreement with the auditing judge's conclusion that the 1943 adjudication in this case, holding that the legacies to the charitable beneficiaries were invalid because testator died within thirty days of the execution of his will, is res judicata and conclusively bars the claim of the exceptants. We also concur with his conclusion that the fund presently before us is not a new or separate fund but is part of the corpus of the estate awarded in 1943 to the intestate heirs subject only to the equitable charge of the annuities.

Mr. Latta, counsel for the exceptants, contended before the court en banc that the 1943 proceedings were rendered void under the ruling in *Pruner Est.*, 390 Pa. 529, because the Attorney General did not receive notice of the audit as parens patriae. This issue was not raised before the auditing judge.

We find no merit in Mr. Latta's argument because we think *Pruner* is inapposite. In *Pruner*, the testator's heirs instituted proceedings to terminate a trust and have the corpus paid to them contending that its purposes could not be carried out. The Orphans' Court denied their request, whereupon they appealed to the Supreme Court which vacated the decree and remanded the record with a procedendo. This was done, the court said, because the failure to give notice to the Attorney General should have compelled the Orphans' Court to refuse the heirs' petition without considering the merits thereof. The Orphans' Court having nevertheless considered the merits of the petition, the Supreme Court concluded that the record be remanded so that the matter could be heard again after proper notice was given to the Attorney General.

*Pruner* bears little resemblance to the present case. The Mortmain statute was not involved as here. In 1943, the Mortmain statute had been in effect in this state for many years and all of the parties in interest, including the Attorney

General as well as the courts, accepted without question the unchallenged and long-accepted statutory provision that gifts to charities were invalidated if the testator died within thirty days of the execution of the will. No one in any way connected with this case in 1943 was endowed with sufficient prescience to anticipate the ruling in *Cavill Est.*, 459 Pa. 411, decided thirty years later in 1974, which declared the Mortmain statute unconstitutional. We think it reasonable to conclude that in uncontested cases such as this, where the statute was applicable and the facts were not in dispute, the Attorney General, even if given notice of the audit as parens patriae, would have accepted without question the validity of the Mortmain statute as he had done in countless cases both before and after 1943. To now permit disappointed legatees to challenge cases routinely decided in past decades in which the property rights of the parties had vested would create chaos and confusion. This is especially applicable where, as in the present case, the legatees had received actual notice of the previous audit.

It should also be noted that in *Pruner* the appeal was filed promptly within the statutory period, whereas in the instant case the ruling of the court was unchallenged for over thirty-five years. In our opinion, the 1943 adjudication is final and conclusive, and *Cavill Estate,* supra, cannot be applied retroactively.

Except where fraud is properly alleged and proven, there can be no challenge or review of an account presented to the Orphans' Court, advertised, audited, adjudicated, and confirmed absolutely, after five years from the decree of confirmation. Such a decree is binding upon the whole world. No exceptions exist to this rule and it applies to all persons whether sui juris or not and includes the Commonwealth. See *Elkins's Est.*, 325 Pa. 373. See also the many cases cited in *Hunter's Pa. O.C. Commonplace Book,* Vol. V, Review, page 236. The reason for this stringent rule is self-evident. "To hold otherwise would open a virtual Pandora's Box to a never-ending amount of litigation by disappointed legatees and would create undue delay and unnecessary uncertainty in the orderly administration of decedents' estates:" *Burger Est.*, 425 Pa. 395,

400. Failure to give actual notice of the filing of an account is not fraud where there was notice by advertisement: *Hamilton Est.*, 351 Pa. 419.

A study of the entire record in this estate raises considerable doubt as to whether the Attorney General was or was not a party to the record in the previous proceedings. Three accounts had been filed prior to the present accounting: the executor's account audited in 1932 by Judge Lamorelle; the trustee's first account audited by Judge Van Dusen in 1943; and the account audited by Judge Sinkler in 1949. At each of these audits a member of the Attorney General's staff entered an appearance for the Commonwealth. Although these appearances were entered for the collection of inheritance taxes and not as parens patriae, it is evident that the Attorney General's office had notice of the filing and audit of each account. In order to properly assess the amount of inheritance taxes due the Commonwealth, its representatives, of necessity, had to study not only the provisions of the will but also the adjudications filed by the respective auditing judges. It therefore follows that some members of the Attorney General's staff must actually have had knowledge of the fact that the court had ruled the gifts to the charities to be invalid as early as 1932, almost fifty years ago.

We need not decide at this time whether notice to a member of the Attorney General's staff for one purpose is notice to the Attorney General for other purposes because Deputy Attorney General Lawrence Barth entered his appearance for the Commonwealth of Pennsylvania as parens patriae for charitable interests at the audit before Judge Pawelec and did not file exceptions to Judge Pawelec's adjudication. Although it is clear that the Attorney General is an indispensable party in a proceeding affecting a charitable trust, the statement found in *Pruner* that failure to make him a party to the record would render any order affecting the trust void should not, in our opinion, be taken literally. Rather than being regarded as void, such an order should more properly be considered voidable at the option of the Attorney General. By the same rationale, the failure of the Attorney General to take exceptions to Judge Pawelec's adjudication stamps the entire proceedings in this estate with his approval.

Accordingly, the exceptions are dismissed, and the adjudication is confirmed absolutely.