## Patterson Estate

[redacted]

· *Christopher H. Gadsden,* for accountant.

*J. Stokes Adams III,* for executors of will of John B. DeCoursey, Jr. and for Ethel DeCoursey and Albert P. DeCoursey.

*Alexander Kerr,* for Trustees of University of Pa.

*Lawrence Barth,* for Commonwealth as parens patriae.

ADJUDICATION BY BRUNO, J., JULY 21, 1981:

\*\*\* Antoinette DeCoursey Patterson died on April 30, 1925. Her will gave her residuary estate in trust for the benefit of her husband, Thomas H. Hoge Patterson. He died in 1929 and in an adjudication dated April 16, 1931 Judge Henderson of this court awarded one-half of the remainder to John Barclay DeCoursey, Jr., and one-half (less $5,000 to be retained in trust) to Emily DeCoursey.

By a fourth codicil to her will, Antoinette revoked a $5,000 legacy in favor of Methodist-Episcopal Hospital and created a legacy in like amount "to the Trustees of the University of Pennsylvania for the use of the University Hospital, to endow a bed therein in memory of my Father, Samuel Gerald DeCoursey." That codicil was executed on April 14, 1925. Antoinette DeC. Patterson died 16 days later on April 30, 1925.

On September 19, 1927 the first account of John Cadwalader, Jr., executor of the estate of Antoinette DeCoursey

Patterson, deceased, was called for audit before Judge Van Dusen of the Orphans' Court of Philadelphia County. Mr. Cadwalader's petition for distribution, filed of record in the clerk's office, contains the following notation:

> Notice has also been given to the Methodist-Episcopal Hospital, Philadelphia, a legacy to which was revoked by codicil within thirty days of decedent's death and to the Trustees of the University of Pennsylvania for the use of the University Hospital, which was named as a legatee in said codicil.

Judge Van Dusen filed an adjudication on October 4, 1927. The adjudication does not mention if anyone appeared for the University. However, the adjudication, on page 2, contains the following statement:

> By a codicil dated April 14, 1925, she revoked the provisions of her third codicil bequeathing $5000 to the Methodist Episcopal Hospital, bequeathed $5000 to the Trustees of the University of Pennsylvania for the use of the University Hospital and again provided that all inheritance taxes should be paid out of her residuary estate. The foregoing codicil was executed within thirty days of the testatrix's death and is therefore inoperative as to the charitable bequest.

No exceptions were filed to Judge Van Dusen's adjudication and it became absolute as of course.

At a subsequent audit in 1931 occasioned by the death of testatrix' husband, the issue of the charitable gift was not raised. Judge Henderson filed an adjudication on April 16, 1931 to which no exceptions were filed.

In 1974 the Pennsylvania Supreme Court, in *Cavill Est.*, 459 Pa. 411, held the mortmain provision of Section 7(1) of the Wills Act of 1947 unconstitutional. Thereafter, Judge Pawelec of this court, in *Barnholser's Trust*, 29 FIDUC. REP. 423, held Section 6 of the Wills Act of 1917 (the 1947 statute's predecessor) unconstitutional. Section 6 of the Wills Act of 1917 was the statute in effect at the time of Antoinette's death.

At the audit of the account before the instant auditing judge, the University of Pennsylvania appeared through counsel and entered a claim for $5,000 plus interest at 3% from April 30, 1926.

The University advances two arguments in support of its claim. First, it seeks to persuade this court to give *Cavill Estate* retroactive application and thereby make the legacy in

Antoinette's fourth codicil valid. Second, it contends that even without retroactive application of *Cavill*, the court can recognize the claim since the money which is now before the court on an account is a "separate fund."

The University's claim is opposed by the executors of the estate of John Barclay DeCoursey, Jr. and by Ethel DeCoursey and Albert DeCoursey (hereinafter "objectants"). The two individuals are two of the four children of John B. DeCoursey, Jr. They have interests in Antoinette's estate as issue of John B. DeCoursey, Jr., and as remaindermen of Emily DeCoursey's residuary trust.

The objectants advance two arguments in opposition to the University's claim. First, they contend that *Cavill Estate* should not be given retroactive application. Second, they submit that the money now in the estate is not a separate fund; it is the same fund to which Judge Van Dusen held the University not entitled in his adjudication in 1927. Therefore, they claim, the matter is res judicata and the University is estopped from asserting the claim.

This matter is most closely analogous to those cases which were spawned by the decision in *Tafel Est.*, 449 Pa. 442. In that case, the Supreme Court overturned a long line of cases and held that adopted children were presumptively included in a gift to "children" unless the testator's intention to exclude them was clearly expressed. As a result of *Tafel Estate*, adopted children, whose claim to entitlement in trust benefits was denied by an orphans' court or whose claim was not presented for adjudication because of the pre-*Tafel* presumption concerning adopted children, sought to assert rights that were given to them by *Tafel*. Unless a strong intention to exclude them can be found, the claims of the adopted children have been recognized.

The threshold issues in each of the adopted children cases were whether the present claim was barred by a previous adjudication and whether the fund to which entitlement was sought was a separate fund. Only after those issues were addressed could the *Tafel* issue be approached.

However, two recent cases have abandoned that approach and by that abandonment have cast doubt upon the continued

vitality of the doctrines of res judicata and of separate funds. Each case bears careful consideration.

In *DeRoy Est.*, 392 A.2d 1355, the testator gave one-eighth of the residue of his estate in trust to pay the income therefrom to his son for life with remainder to the son's children or their issue. In default of children or issue, the son's widow was given a life estate and on her death the principal was to revert to the testator's estate and be distributed to his intestate heirs.

The son died in 1933 without leaving natural children, but left an adopted child. At the audit of the account occasioned by the son's death, the adopted child, through a guardian ad litem, made a claim for principal as "children." On the basis of the law as it then existed, the orphans' court denied her claim to principal and ordered that the income be paid to the son's widow.

Forty-five years later the widow died. At the audit of the account occasioned by the widow's death, the adopted child presented a claim for the trust principal. The orphans' court denied her claim and ordered that the principal be distributed to testator's intestate heirs. Exceptions were filed to the adjudication of the auditing judge, which were dismissed by the court en banc. On appeal to the Supreme Court, the decree of the orphans' court was reversed and the principal of the trust was ordered to be paid to the adopted child.

In so reversing, the Supreme Court held that the 1933 decree precluding the adopted child from principal was not a bar to the presentation of her claim for principal at this time. The court simply stated that the subject matter of this claim was a "distinct fund." How it arrived at that determination is difficult to understand. It was done by fiat. Nonetheless. the court so held.

More importantly for the present purposes, however, is the holding of the court that comment f to Section 70 of the *Restatement of Judgments* (1948 Supplement) was applicable to the case. Comment f provides as follows:

> The determination of a question of law by a judgment in an action is not conclusive between the parties in a subsequent action on a different cause of action, even though both causes of action arose out of the same subject matter or transaction, if it would be

unjust to one of the parties or to third persons to apply one rule of law in subsequent action between the same parties and to apply a different rule of law between other persons.

Using comment f as a springboard, the court jumped into new waters when it stated, at p. 1358, that:

The law as now stated by *Estate of Flinn . . . Estate of Sykes . . .,* and *Tafel Estate . . .,* would require the orphans' court to distribute to appellant the principle (sic) of any trust established by language such as that used by testator in this case. *It would obviously be unjust to apply that rule of law to adopted children other than appellant while adhering to the former rule when called upon to decide how the principle (sic) of the instant trust should be distributed.* (emphasis added).

This concept of unfairness, first advanced in *DeRoy Estate,* was made the basis for the court's decision in a subsequent case, *Biddle Est.,* 410 A.2d 782. In that case, an adopted child sought to participate in future income distributions from a testamentary trust established by his adoptive great-grandfather. The orphans' court held that the claim was barred because the adopted child failed to litigate the claim at an audit in 1952. On appeal, the Supreme Court reversed the orphans' court and held that the 1952 audit did not bar the claim and did not preclude the adopted child from participation in future income distributions.

In announcing its decision, the court noted its disdain for the principle of res judicata: 410 A.2d at 785. The court then endorsed wholeheartedly the "unfairness" concept announced in *DeRoy Estate.* It stated, "Our determination here is no more than an application of the result reached by this court just one year ago in *Estate of DeRoy . . .*", and *"DeRoy* emphasized the unfairness of precluding the adopted child from the benefits of our decision in *Tafel:"* 410 A.2d at 785 and 786.

The court found comment f to Section 70 to be a "salutary principle" and expressed its pleasure that the tentative draft of the *Restatement (Second) of Judgments* retains "this salutary principle in clear form:" 410 A.2d at 786. That section the *Restatement of Judgments (Second)* provides as follows:

§68.1    Exceptions to the General Rule of Issue Preclusion

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between

the parties is not precluded in the following circumstances:

\* \* \* \* \* \*

(b) The issue is one of law and . . .

    (ii) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws . . . (Tentative Draft No. 1) (1973).

The *Biddle* opinion plainly states that "the orphans' court should have been guided by this principle:" 410 A.2d at 786.

The patterns displayed in *DeRoy Estate, Biddle Estate* and this estate are identical. A prior adjudication excluded the claimant from participation in a fund, the law upon which the exclusion was based was changed to claimant's favor, the claimant then sought to assert the claim at a subsequent audit on the basis of the change in the law. Under the principles announced in *DeRoy Estate* and *Biddle Estate,* the claim previously not recognized must now be recognized if the claims of the other parties in other estates having the same status as the claimant are being recognized. Failure to recognize the claim would work an injustice upon the claimant for he would be denied benefits being extended to others similarly situated.

The law no longer invalidates charitable bequests merely because of the fortuitous circumstance that the testator died within thirty days of the execution of his will. All charities now enjoy this benefit. Because other charities enjoy the benefit of the change in the law, the benefit must be extended to the University in this case. Accordingly, the claim of the University to the $5,000 legacy is allowed.

The University submits that it is entitled to simple interest at the rate of 3% on its legacy from April 30, 1926. The auditing judge is of the opinion that interest should be allowed only from June 29, 1978 the date of the adjudication in the Estate of Sarah Jones as appointed by the will of Emily DeCoursey. For it is that adjudication which created the fund to which the University made claim. Prior to that date there was nothing for the University to claim.

The account shows a balance of principal of $25,107.32 which, composed as indicated, is awarded, together with a balance of income of $7,617.53 and with any additional interest and collections on deposit to the time of actual distribution,

as follows: $5,000 from principal plus interest at 3% from June 29, 1978 to the University of Pennsylvania, for the purposes stated in the fourth codicil to the will; one-half of the balance of principal and income to Jeddie Parker DeCoursey and Richard K. White, Jr., executors of the estate of John B. DeCoursey, Jr., deceased; one-half of the balance of principal and income, in equal shares, to John B. DeCoursey, III, Antoinette DeC. Brown, Ethel DeCoursey and Albert DeCoursey. ***