Estate of Mone S. Fridenberg, Deceased *v.* The Trustees of the University of Pennsylvania, Appellants.

Argued April 4, 1983, before Judges ROGERS, WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Edwin H. Rouh, Jr.,* with him *Joseph C. Bright, Jr. and John A. Ballard,* of counsel, *Cuthbert H. Latta, Drinker, Biddle & Reath,* for appellant.

*Israel Packel,* with him *William R. Levy and William T. Tsiouris,* of counsel, *Fox, Rothschild, O'Brien and Frankel,* for appellees.

OPINION BY JUDGE WILLIAMS, April 26, 1984:

The Trustees of the University of Pennsylvania have appealed from a decree of the Orphans' Court Division of the Court of Common Pleas of Philadelphia County. The decree was one dismissing the University's exceptions to an adjudication by an auditing judge relative to the distribution of the remaining principal of a trust fund that had been created by Mone S. Fridenberg in 1931.[1]

By the residuary clause of a will executed in early February 1931, Mone S. Fridenberg created a trust that was primarily for the benefit of his wife and sis-

---

[1] Given that this appeal was originally filed as long ago as 1980, and that the appellees have registered no objection concerning our jurisdiction, we have decided to assume jurisdiction pursuant to Section 704(a) of the Judicial Code, 42 Pa. C. S. §704(a).

ter. By the terms of the trust three named individuals, not including the testator's wife and sister, were to receive, out of trust income, annuities in the sum of $1,000.00 a year for life. The balance of the trust income was to go to the testator's wife and sister for their joint lives, and then to the survivor of the wife and sister.

The trust also provided that, upon the death of the survivor of the testator's wife and sister, the sum of $100,000.00 from the trust principal was to be paid to the Hospital of the University of Pennsylvania for its use. That gift included a direction that the recipient erect a memorial to the testator's parents. As to the remaining balance of the trust principal, the testator provided that the income therefrom was to be paid to the United Hebrew Charities of Philadelphia, until such time as that organization decided to erect a hospital, home or other charitable-purpose object as a memorial to his parents. If United Hebrew Charities decided to create such an object, the organization would receive one-half of the remaining principal for construction costs; and would receive, upon the completion of the memorial, the remaining trust principal for the keep, support and maintenance of the memorial.

As noted, the testator, Mr. Fridenberg, executed his will in early February of the year 1931. He died on February 19, 1931—*fewer than thirty days after the execution of the will.* The length of time between the execution of the will and the testator's death became significant, because of the "mortmain" provision in Section 6 of the Wills Act of 1917,[2] which was in ef-

---

[2] Act of June 7, 1917, P.L. 403, *as amended, formerly* 20 P.S. §195. That provision was replaced with Section 7(1) of the Wills Act of 1947, Act of April 24, 1947, P.L. 89, *as amended, formerly* 20 P.S. §180.7(1). A similar provision is now found in 20 Pa. C. S. §2507.

fect when Fridenberg executed his will. Section 6 of that statute provided, in pertinent part, as follows:

> No estate, real or personal, shall be be-queathed or devised . . . to any person in trust for religious or *charitable* uses, *except the same be done by will at least thirty days before the decease of the testator* . . . ; and all dispositions of property contrary hereto *shall be void* and go to the residuary legatee or devisee, heirs or next of kin, according to law. (Emphasis added.)

In 1932, the account of the personal representative came before the Orphans' Court of Philadelphia County for audit. In that proceeding, the auditing judge commented on the failure of the charitable gifts in the Fridenberg will, but expressly refrained "from making any ruling as to the devolution of the corpus upon the death of the survivor of the cestui que trust."

The testator's sister died in 1940, and his wife in 1943. At the time of the wife's death, two of the three annuitants were still alive. Upon the wife's death, the trustee filed an account. The statement of proposed distribution asserted that the charitable bequests under the will had failed by force of Pennsylvania's "mortmain" statute. In the audit proceedings pursuant to the trustee's 1943 account, the two remaining annuitants took the position that a trust principal of $100,000.00 would be sufficient to secure their annuities.[3] By an adjudication dated December 10, 1943, the auditing judge held that the charitable gifts, to the Hospital of the University of Pennsylvania and United Hebrew Charities, had failed under the "mortmain" statute because testator Fridenberg had executed his will within thirty days of his death. The

---

[3] At the time of the 1943 audit, the principal balance of the trust fund was approximately $559,000.00.

adjudication next awarded $100,000.00 back to the trustee "in trust for the uses and purposes of the will"; and awarded the rest of the trust fund to the estates of the testator's wife and sister, his heirs at law. Both of the above-mentioned charities had been given notice of the 1943 audit proceedings; but no exceptions were filed regarding the auditing judge's adjudication.

In 1949, one of the two remaining annuitants died; thereupon, the trustee filed another account. As a result of the 1949 audit proceedings, an adjudication was entered awarding half of the existing trust fund to the estates of the testator's wife and sister, and the other half back to the trustee "for the further uses and purposes declared by the will."

In 1974, approximately twenty-five years after the adjudication last mentioned, the Supreme Court of Pennsylvania rendered its decision in the case of *In Re Estate of Cavill,* 459 Pa. 411, 329 A.2d 503 (1974): holding that Pennsylvania's "mortmain" statute was unconstitutional and, thus, of no effect.

In 1977, the last of the three annuitants died. Consequently, the trustee filed an account of the trust principal still held by it: *approximately $59,600.00.* That fund was claimed by the estates of the testator's wife and sister—and by the two charities. The charities based their claims on the fact that the "mortmain" statute had been declared unconstitutional in *Estate of Cavill,* decided three years before the trustee filed the 1977 account. However, by an adjudication dated February 22, 1980, the auditing judge awarded the entire balance of the trust principal to the heirs' estates. One of the charities, the University of Pennsylvania, filed exceptions to the adjudication. The Orphans' Court sitting *en banc* heard argument on the

exceptions; and then, in an opinion authored by the Honorable Charles Klein, entered a decree dismissing the exceptions. From that decree the instant appeal followed.

It is well settled, as the court below recognized, that a rule of law applied in distributing a portion of an estate is not binding on a court in a subsequent adjudication relating to another portion of the same estate. *Estate of Flinn,* 479 Pa. 312, 388 A.2d 672 (1978); *Arrott Estate,* 421 Pa. 275, 217 A.2d 741 (1966); *Kellerman's Estate,* 242 Pa. 3, 88 A. 865 (1913). This principle is particularly applicable where the previous adjudication was based on a rule of law no longer followed. *Estate of Flinn; Arrott Estate.* It is the duty of an auditing judge, in awarding a distribution, to require that the allocation be controlled by the law in effect at the time of that audit. *Arrott Estate; Kellerman's Estate.*

The above principles notwithstanding, the 1980 adjudication was based on the auditing judge's conclusion that the claims of the two charities were barred by the doctrine of res judicata. The auditing judge determined that the adjudication made in the year 1943, distributing part of the trust principal to the testator's heirs and awarding part back to the trustee, was a conclusive determination which precluded the charities from making a subsequent claim regarding the trust principal. According to the 1980 adjudication, the portion of trust principal returned to the trustee in 1943 had, pursuant to the 1943 decree, become vested in the estates of the testator's heirs—subject to an "equitable charge" in favor of the then-surviving annuitants. In short, the 1980 adjudication was based on the premise that the fund then before the court was *not separate from the fund awarded in 1943.* We must disagree with that premise.

Given the principles of law set forth in *Estate of Flinn, Arrott Estate* and *Kellerman's Estate*, the crucial question regarding the applicability of res judicata is whether or not the fund presently in issue had been *distributed* pursuant to a prior adjudication. With respect to the instant case, we must conclude that the amount of trust principal held by the trustee in 1977 was a portion of the testator's estate which was separate from the portion awarded in 1943, and in 1949, to the estates of the testator's heirs. The fund held by the trustee in 1977 was still a part of the trust created by the testator, and was being held to generate income to pay one of the annuities the testator had willed.[4] To say that the remaining principal held by the trustee was subject to an "equitable charge" does not alter the fact that the fund remained undistributed at the time the 1977 account was audited—a time long after the Pennsylvania Supreme Court, in *Estate of Cavill*, invalidated the "mortmain" statutes.[5] Consequently, we hold that the court below erred in not giving the two charities the legal benefit of that decision, in the 1980 adjudication. To say, as did the court below, that the *undistributed* $59,600 had become "vested" in the estates of the testator's heirs, would nullify the rule of distribution set forth in *Estate of Flinn, Arrott Estate,* and *Kellerman's Estate.*

In sum, neither the "mortmain" statute nor any pre-1980 adjudication gave the Orphans' Court of Philadelphia County a basis, in its last adjudication,

-----

[4] As noted, the 1943 adjudication stated that the part of principal being returned to the trustee at that time was *"in trust for the uses and purposes of the will."* (Emphasis added.) The 1949 adjudication, in effect, made the same point.

[5] Although the Supreme Court in *Estate of Cavill* had before it Section 7(1) of the Wills Act of 1947, the invalidation of that provision clearly applied with equal force to the 1917 "mortmain" statute.

for ignoring the testator's intention to create a charitable object in honor of his mother and father: even if the effectuation of that intent must now be on a smaller scale than he contemplated.

For the reasons set forth above, we must reverse and vacate the decree of the court below.

ORDER

AND Now, the 26th day of April, 1984, the decree of the Orphans' Court Division, Court of Common Pleas of Philadelphia County, dated December 16, 1980, at No. 3804 of 1931, is hereby reversed and vacated; and this matter is remanded to that court for proceedings consistent with the annexed opinion.